Ruffin, C. J.
 

 The bill was filed in November, 1839, and the object of it is to obtain a conveyance of foi^ tracts of land adjoining each other, situated in the counties of Rutherford and Lincoln, and containing in the whole 740| acres; which the plaintiffs'claim as the heirs at law of James Rutherford, deceased. It sufficiently appears in the pleadings and proofs, that James Rutherford died in November, »1819, without having been married,- and leaving brothers and sisters, natives and residents of Scotland, and subjects of the King of Great Britain, and also leaving Walter B. Rutherford, a son of Alexander Rutherford, one of the said brothers of the said James, which said Walter B. was also a native of Scotland, and came into this State and married here in the year 1816, and has ever since resided here without being naturalized: and that the plaintiffs are the issue of the said Walter B. Rutherford; born in this State, of his said marriage.
 

 The bill states, that in 1818, James Rutherford, for a price paid, purchased the land in question from Joseph Weir, who
 
 *123
 
 was then seized of it, as described in the bill, and in a plat of survey thereto annexed; and that Weir then executed a penal bond for a large sum of money, with condition to be void on the conveyance of the land in fee simple by Weir to Rutherford or his heirs on request. That one Hogg became the administrator of the intestate James in 1823, and came into possession of his papers, and, among them, of the bond or articles in question; and that upon some agreement or' combination between Hogg and Weir, the former delivered the bond to the latter, from whom it has not been since obtained, and by whom it was probably destroyed.
 

 The "bill then states, that Joseph Weir died in 1828, leaving a widow and several -children, who are made defendants in this suit; and also that Joseph Green, another defendant, is in possession of, and claims a part of the laud purchased by James Rutherford, but that if he has a sufficient conveyance for the same, he took it with notice of J. Rutherford’s previous purchase, and cannot hold against' thej plaintiffs.
 

 The prayer is for a discovery and production of the bond or articles, and for proper conveyances of the legal title from the defendants for the parts of the land, of which the title is in them j|jspeclively, and for general relief.
 

 The widow and heirs of Weir answered together, and the defendant Green separately. Neither answer admits the bond from Weir to Rutherford, nor any knowledge, if there was such an one, that.it covered the land in dispute. That of the Weirs states, that as they understood and believe,
 

 Hogg, as administrator of James Rutherford, instituted an action of debt against Joseph Weir on some bond, and that a compromise was made between them, on which Weir paid the costs and made satisfaction to Hogg for the contract and took it up; and they suppose that may have been the instrument on which this bill is founded, though of that they have no knowledge or information. Those defendants further say, that they have not been in possession or enjoyment of any of the land claimed by the plaintiffs, since the death of Joseph Weir; and they do not admit that the plaintiffs are the heirs at law of James Rutherford.
 

 The answer of Joseph Green admits the plaintiffs to be
 
 *124
 
 Rutherford’s heirs, as alleged by them; and that he wasseiz-e(^ acres of the land described in the bill, and lying in Lincoln; which he claims in the following manner: He sa7s J°sePk Weir entered into a recognizance which bound these lands to the State, upon which judgment W8S rendered, and the lands sold by the sheriff on an execution thereon isrued, and were purchased by one Samuel Green, who took a sheriff’s deed, and afterwards conveyed to this defendant, Joseph Green.
 

 Both the answers further state, that before the conveyance from Samuel to Joseph Green, the plaintiffs filed a bill upon the same subject matter against Samuel Green and the present defendants, the Weirs; in which there was a decree in favor of the defendants to that suit, dismissing the bill: and they pray the benefit thereof as a bar to the present bill.
 

 It may be as well to dispose of this last point at once, by mentioning that the defendants have failed to establish it by offering any former decree in evidence. The truth is, the answers are mistaken on. that point, as we happen to remember that the former suit alluded to was transferred to this court for hearing; and that when it should have been heard, the counsel for the plaintiffs found, that for some defect of proof, he could not sustain the bill, and asked lea^ to dismiss it before the hearing, without prejudice; which was accordingly granted; and then, it seems, the present suit was brought. Clearly, if the former proceedings were before us, there is nothing in them that could present an obstacle to .the present bill; but as they have not been read, it is sufficient to declare that the defendants have failed to establish the fact stated in that part of their answers.
 

 Upon the question of the right of the plaintiffs to inherit from James Rutherford, which is made in
 
 the
 
 answer of the Weirs, the court entertains no doubt. The facts are clear, that they are the nearest relations of the deceased, who are citizens of the United States, and that their father and all the brothers and sisters of the deceased are aliens. The matter of law is equally clear; as it was long ago decided in an ejectment brought upon the demises of the present plaintiffs.
 
 Rutherford v Wolf,
 
 3 Hawks 272. It was there
 
 *125
 
 held, that the act of 1801 remained in full force, standing the general canons of 1808; and to that may now be added the legislative sanction, by the re-enactment of both those acts together, in the Revisal of 1836.
 

 A question might have been made between the plaintiffs themselves, whether some of them can claim parts of the land as being co-heirs with the other plaintiffs. All of them are eight in number; so that it is probable some of them might not have been born before the act of 1823, c. 1210, went into operation; and as to those born after, a plausible objection might be raised, that they were not heirs. But we think there would not be much difficulty in the point, had the facts been stated, to raise it. Before the act, all the brothers and sisters, although some of them were posthumous, would be admitted, as they came into life, to inherit.
 
 Cutlav
 
 v
 
 Cutlar,
 
 2 Hawks 324. This the statute of 1823 altered, by enacting that no inheritance shall descend to any person, unless such person shall be in life at the death or within ten months after the death, of the person last seized. But we do not think the present case within that act, since James Rutherford, the
 
 proposilus,
 
 died in 1819, and the descent from.him was fixed by the law as it existed at the time of his death. The act, if the words were doubtful, ought not to be construed so as to affect the right to lands previously descended. But the language in this caséis all future: “ no inheritance
 
 shall
 
 descend to any person, unless such person shall be in life” &c.; which clearly shews, that its provisions are altogether prospective and do not embrace the case of a descent from a person before that time dead. We think, therefore, that all the plaintiffs are entitled to a conveyance, if any of them are. And we have, accordingly, next to consider, whether the plaintiffs have made out a case for the relief they ask; and we are of opinion they have.
 

 Three witnesses establish the existence of the bond from Joseph Weir to James Rutherford very clearly. One of them, .Francis Alexander, states that at the request of those parties, he surveyed the lands, which by the bonds Weir obliged himself to convey to Rutherford, and he identifies it' by annexing the plan of survey to his deposition: which
 
 *126
 
 surveyhe says was made before the bond was executed, but with a view to it. This witness farther proves, that after the death of Rutherford, Hogg, as his administrator, brought an aci*otl against Weir on the bond, and that, after it had pended some time, Weir paid to Hogg, in bonds on other persons, the value they set on the lands, and Weir took his bond up, and probably destroyed it. Under such ' circumstances we cannot hesitate to declare, that there was a valid agreement in writing, whereby Wier was compellable in this court, to convey the lands described by the witness, to Rutherford, and that it remains in full force. It is true, the plaintiffs do not give precise evidence of a particular price paid or other valuable consideration moving from Rutherford. But it is sufficiently shewn, that there were pecuniary transactions between those persons, in the course of which a treaty for this purchase arose; and when this covenant or obligation was subsequently given, the inference is a natural one from the course of dealing, that it was founded on an adequate consideration, which inference is to be deemed the stronger against Weir, from the fact that he unjustly, as against these plaintiffs, possessed himself of that instrument, so as to deprive them of the power of using the instrument itself, as evidence of the consideration which Rutberlord had given.
 
 Henderson
 
 v Hoke, 1 Dev. & Bat. Eq. 147. And this is more especially a fair inference, since, daring the litigation with Hogg, Weir made no pretence that the contract was voluntary, or not founded on a full consideration, but actually paid to Hogg the full value of the land, as estimated by them.
 

 It was, faintly indeed, contended on the hearing, that this obligation was a personal contract, and that the administrator could maintain an action on it, and that, therefore, the payment to Hogg and cancelling the instrument was a discharge of it. In the first place, it may be questioned whether the personal representative could have an action on the bond. Shep. Touch. 171.
 
 Thrower
 
 v
 
 McEntire,
 
 4 Dev. & Bat. 359. But if he could at law, it is the settled principle of equity, that a valid contract for the conveyance of land, is, in itself, an equitable conveyance, whereby the per
 
 *127
 
 son to whom it is given, is regarded in equity as the comif píete owner; and is entitled at any time to call for a lega
 
 j
 
 conveyance, whereby he may become legal owner also'
 
 Ward
 
 v Ledbetter, 1 Dev. & Bat. Eq. 496. That equitaJ ble ownership descended in equity to the present plaintiffs, and of that inheritance no arrangement between Weir and Hogg could defeat them.
 

 Another objection taken by the defendant Green is, that he is entitled to the protection given to a purchaser without notice-. This is founded on the evidence of Samuel Green, under a conveyance from whom this defendant derives title. He states, that he became the purchaser of the land at a sale made by the sheriff of Lincoln, on the execution in favor of the State against Joseph Weir, as set forth in the answers; and that, at the time he purchased, he paid the purchase money and took a conveyance from the sheriff; he had no knowledge whatever of any claim but Weir’s to any part of the land*" If this were true, and if, also, it formed a defence to the ,bill, in point o’f law, we could not act on it in this case, since it is not relied on or in any manner brought forward or hinted at in the answer; and the deposition, being to a matter not in the issue in the cause, cannot be regarded. But, if the answer had stated the point in the most formal manner, it would have been ineffectual, inasmuch as we hold, that a purchase at sheriff’s sale, like every other assignment by act of law, only transfers the interest of the debtor, whatever it may be, and in the state it is in, subject to all equitable as well as legal demands of other persons.
 
 Dudley
 
 v Cole, 1 Dev. & Bat. Eq. 429.
 
 Freeman
 
 v
 
 Hill,
 
 Idem. 389.
 

 The plaintiffs are therefore entitled to the decree establishing the agreement, and that the defendants severally convey to them the parts oí the land of which they are respectively seized. What those parts are, we do not clearly perceive upon the pleadings or plat. It is stated that the defendant, Green, purchased all that part of the land which lies in Lincoln county, and that it contains 640 acres; but the part thus claimed by him is not distinguished, either by laying down on the plat the line between the counties, or
 
 *128
 
 otherwise; and, hence, an enquiry on that point must be made. The costs of the enquiry, and also all other costsi afe between the plaintiffs and the defendant Green, must be jiaid by him; but as against the other defendants, the heirs and widow of Weir, the plaintiff does not recover costs.
 

 We must not omit to notice that the defendant, Green, states in his answer, that before the commencement of this suit, he had sold to different persons more than 400 acres of the land. He has not, however, specified the parts or persons, nor on the hearing offered evidence of such sales, much less of conveyances; and, therefore, we cannot proceed upon the supposition of the existence of tljem. If the fact be as stated, it will be for the plaintiffs to take their remedy, as they may be advised,- either by adopting the sales and receiving the price from the defendant, or by bringing in the purchasers and claiming the land.
 

 Per Curiam, The plaintiffs declared entitled to recover, and Enquiry ordered.