Ruffist, C. J.
 

 The Court
 
 mast protest
 
 against all attempts to raise points for decision here, which did not occur on the trial of the cause. The rights of the parties are to be determined on the facts proved, and not on any supposed or suggest-ted on a motion for a new trial. Such is the state of this
 
 case;
 
 for after the verdict, no further evidence, properly speaking,
 
 *467
 
 Could be heard, and therefore the Court could not judicially know, that Mary L. Davidson left uncles and cousins. That fact, might, it is true have been brought forward as a reason for a new trial; but that would be on the ground of surprise or oversight of counsel, and would be exclusively for the determination of the presiding Judge. If, then, there was any force in the last point made, this Court could not act on it, but would, notwithstanding, be obliged to affirm the judgment. As we think, indeed, there is nothing in it, we have no objection in this case to express our opinion on it, as it may prevent further litigation.
 

 We think all the points taken for the defendant extremely plain.
 

 First, with respect to the title of the feme lessor of the plaintiff. It is immaterial, whether the
 
 propositus
 
 took by purchase or descent; for that could only affect the right of succession of the mother and the parental relations, as between themselves; and in either case, that is to say, whether upon the death of M. L. Davidson, the land descended to the mother or the uncles and cousins, that descent was but temporary, and her posthumous brethren became entitle upon their births and divested the previous descent. This was undoubtedly a principle of the common law, Co. Lit. 11. b., and it prevailed in this state and was adapted to the course of descent established by statutes here, until altered in in 1823.
 
 Cutlar
 
 v.
 
 Cutlar 2
 
 Hawks 324. In that case, not only the general doctrine was acknowledged, but it was declared, that it must prevail in a case of half blood, where they are entitled to inherit. There is no doubt, however, that the
 
 propositus,
 
 being the sole heir of her father, took by descent and not by devise, as the will gave her the same estate precisely that she would have taken without if. Therefore, under the acts of 1784, the mother in this case was not entitled to a life estate, but the descent was immediately in fee to the
 
 paternal
 
 relations.
 
 Trustees of the University
 
 v.
 
 Holstead, 2
 
 Law Reports 406. But, in such a case, it was finally established in
 
 Ballard
 
 v.
 
 Hill,
 
 3 Murph. 410, that the half-blood of the maternal line.
 
 *468
 
 in nearer degree, was preferred by the acts of1
 
 1784;
 
 to the more remote collaterals of the paternal line ; and, whatever doubts may have been formerly entertained or really existed on that question, it would be impossible for us, after that de-' cisión and the abrogation of the acts of ’84 by the.legislation of 1808, to disturb it without producing the most serious evils. Consequently, according to
 
 Cutlar
 
 v.
 
 Cutlar,
 
 the birth of a child by the mother’s second marriage displaced the estate of' the uncles and cousins; and upon the subsequent birth of other children of that marriage, at least up to the year 1808, the inheritance opened to admit them as co-heirs with those previously born ; of whom the lessor of the plaintiff, Harriet, was one. The only remaining question upon her title is, as to the extent of her interest, in respect to the share of the land belonging to her, as raised upon the motion for a new trial. Upon that his Honor held, as the three daughters only were born before 1808'and the son, William F., was born in 1810;• the latter was entitled to no part of the land, because by the 4th rule of the act of 1808, where the inheritance comes by descent to the
 
 propositus,
 
 it descends to the next collateral relations of the person last seized, who are of the blood of the ancestor, from whom it first descended; and, therefore, in this-case, the uncles and cousins were preferable, as the heirs, to William F. and the estate vested in them at the' death of the
 
 propositus,
 
 would not be displaced for him. And we should-think so too, if the question were between the brother and the paternal relations
 
 ;
 
 for it is certainly competent to the legislature,- before a person comes
 
 in esse,
 
 to change the course of descent, so that such person shall not succeed as heir, although, but for such change of the law, he would have been heir at his birth. The heir takes, not by contract or any inherent right, but by law; and therefore the right of success-' ion is subject to be modified as the legislature pleases, until-some person comes into being,- in whom it vests. But in this case the question is not between those persons, but is between-the sisters -and the brother; for the right of the paternal relations had been divested by the birth- of the first daughter
 
 3
 
 
 *469
 
 who took the whole, as against them, and subject not to defeated, but only to open for the benefit of after-born brothers and sisters; and the enquiry is ; whether, according to the true construction of the act of 1808, such of those persons, as were born before that time, can insist on keeping the whole' and excluding a child born afterwards. We think not. The principle of the case of
 
 Bell
 
 v. Dozier, 1 Dev. 333, is directly in point. There is nothing in the statute which gives a preference to one brother or sister over another, according to the periods of their respective births. That is not the ground of the argument for the plaintiff, against the admission of William F. Davidson. But it is that by the letter of the act he cannot inherit, as a maternal brother of Mary L. Davidson, because she left relations of the blood of her father, from whom the land descended to her. But it is manifest that he is excluded in that case, not on the ground of any unfitness, that he should inherit, but on the ground that the paternal relations are'the more proper heirs of land, descended from the father. In other words his claims are postponed to those of the paternal relations, solely for the sake of the latter. Therefore, when the paternal relations, though existing, cannot inherit, it is the same thing, within the purpose of the act, as if they did not exist.- Hence, it was said in
 
 Bell
 
 v. Dozier, the words “ capable of inheriting,” must be understood as added to the description of the paternal relations, who are’to exclude other nearer-relations. And'this principle is even the more applicable to the 4th and 5th canons than to the sixth; for the fifth canon is express, that when the inheritance is transmitted by-descent, and the blood of the ancestor,- from whom it descended, is extinct, it shall then descend to the' nearest collateral relations of the
 
 propositus,
 
 of either line.' So it is clear, that under the act of 1808, William F. Davidson, though born in 1810, would inherit with, his sisters, if there' had been no brothers of Thomas Davidson; and therefore, as-they do not take, the accident of their existence at the death of Mary L. Davidson ought to form no impediment to his participating in the inheritance with his sisters. ' We are-
 
 *470
 
 therefore, of opinion, that Mrs. Caldwell is entitled to one un» divided fourth part of the premises, and the defendant to the other three.
 

 We should have been of opinion with his Honor upon the question, whether William Davidson was tenant by courtesy, even upon the supposition, that the
 
 •propositus
 
 took by purchase, and that the descent was at first, to the mother. For the \vife had but a defeasible fee, and the very fact necessary to constitute him tenant by the courtesy, namely, the birth of issue, defeated his title by the coming in esse of a preferable heir. But that is put entirely out of the case by the defendant’s admission, that the uncles and
 
 cousins were the heirs,
 
 and not the mother.
 

 The objections founded on the statute of limitations are hext to be considered. In relation to the possession of the premises by William Davidson, it is to be observed that it could not put the statute in motion even against the uncles as he held without color of title. But if it had been otherwise it would not have affected the after-born
 
 children; for
 
 a preferable heir does not succeed to the heir, who first took, in the sense of coming in under him, and, therefore, to be bound by his acts. On the contrary, he comes in above him, and de_ feats his estate altogether. Suppose the uncles had sold the estate, before Mrs. Davidson had a child by her second marriage ;■ clearly such a child, when born, would nevertheless take. Therefore the
 
 laches of the uncles
 
 cannot bar the infant heir, if their acts could not.
 

 Upon the point, that the lessors of the plaintiff are barred, because two of the co-heirs were under no disability and would be barred by the possession of the defendant since 1823, under the deed of William Davidson, it is unnecessary to advert to the reasoning, on which his Honor answered the objection— on
 
 which'we give no opinion
 
 ; nor
 
 to
 
 recur to
 
 any general
 
 reasoning from the positions, that although tenants in common must join in personal actions, yet that generally they must Sever in real or mixed actions, because they have several freeholds and different titles. It is thus unnecessary, because we have an adjudication of this Court upon the very
 
 *471
 
 point, in
 
 McRee
 
 v.
 
 Alexander,
 
 1 Dev. 321; in which it was held, that in ejectment upon the demises of all the heirs, there should be judgment against the plaintiffs as to the shares of his lessors, who were under no disability, and lor him as to the share of one who was under disability.
 

 The remaining ground, that the action by the husband and wife cannot be sustained, because seven years have run during the coverture, and the female plaintiff must now wait until the coverture is ended before she can enter or sue, we must say, is altogether new to us, and seems to be wholly untenable. In general, the husband and wife must join in actions for the recovery of the wife’s lands. The freehold is hers, and the right of entry also, and an action brought by them survives to her. The object is to regain her seizin. Where they are in possession, the husband cannot in pleading allege the seizin to be in him, even though he adds tha.t it is in right of his wife;
 
 Polyblank
 
 v. Hawkins, Doug. 329;
 
 Took
 
 v.
 
 Glasscock,
 
 1 Saund. 250, e; but it must be stated, that the husband and his wife were seized in their demesne, as of fee, in right of the wife. Such is the case, even when the husband and wife have been at one time seized during the cover-ture. Much more must the wife be joined, when the object is to recover land of the wife, of which there was an adverse possession at the time of the marriage and has been ever since ; for the husband gains no estate in those lands by his marriage, nor until he enters and reverts the seizin.
 
 Gentry
 
 v.
 
 Wagstaff,
 
 3 Dev. 270. Consequently, the husband could not bring an action in his own name alone, nor make a lease. It was said, indeed, at the bar, that the action was essentially that of the husband exclusively, as the wife, had no capacity to make the supposed lease stated in the declaration, but the husband alone. But that must have been said without much research ; as, surely, the capacity to convey in fee includes that of leasing for years. Besides, the St. 32, Hen. 8, ch. 28, sec. 2, has been re-enacted here, Rev. St. ch. 43, sec. 9, and that expressly enables husband and wife to make leases of her lands; and the lease set forth in the declaration, being a fiction, is always
 
 *472
 
 supposed to be good, if the lessors had .capacity to make any *ease’ an<* had the right to .enter into the premises, there to make the lease. But .we need not further consider the question on principle; for this point also is concluded by the authority of adjudications. The same case of
 
 McRee
 
 v.
 
 Alexander,
 
 1 Dev. 321, involved also the point before us,, as more than se.ven'years elapsed during the coverture of Mrs. Henderson, and the only demise, on which a recovery -was had, was that by her husband and herself for her share: this being still a stronger .case, because here the adverse possession began before the marriage, whereas there ft commenced during the coverture. Besides, were it in actions -for personal things, which, when recovered, belonged wholly to the husband, the action of the husband and wife is saved from the operation of the statute against the husband by the disability of the wife,
 
 Allen
 
 v. Gentry, 2 Law Repos. 609,
 
 Davis
 
 v.
 
 Cook,
 
 3 Hawks 608. And both of those .cases also give to the plaintiff in this action the cumulative disabilities the female lessor of the plaintiff labored under, of infancy and coverture, from the .commencement of the adverse possession to the bringing of ,this suit.
 

 Per Curiam, Judgment affirmed.