MANLY H. BYERLY, ADMINISTRATOR OF THE ESTATE OF IVISON JEROME TOLBERT v. RUBY ROSALIE SHIRLEY TOLBERT, WIDOW; MILDRED VIOLA TOLBERT; JOSEPHINE ANNETTE TOLBERT, GLENDA SUE TOLBERT; JERRY MICHAEL TOLBERT; SANDRA LOUISE TOLBERT AND RUBY ROSALIE SHIRLEY TOLBERT (THE PERSON WITH WHOM MILDRED VIOLA TOLBERT, GLENDA SUE TOLBERT, JERRY MICHAEL TOLBERT, JOSEPHINE ANNETTE TOLBERT AND SANDRA LOUISE TOLBERT LIVE.)

(Filed 8 April, 1959.)

1. Death § 8—

While recoveries for wrongful death are not assets of the estate in the usual meaning of that term, they are to be distributed as provided for the distribution of personal property in case of intestacy. G.S. 28-173.

2. Descent and Distribution § 4—

G.S. 35-45 and G.S. 28-154 contemplate that an after-born child of an intestate is entitled to share in his estate, both real and personal.

3. Same—

G.S. 29-1(7) applies to the descent of realty and not to the distribution of personalty to an after-born child. Whether the statute relates solely to the descent of realty to collateral heirs, *quaere?*

4. Statutes § 5a—

The primary rule in the construction of a statute is to ascertain the intention of the General Assembly.

5. Descent and Distribution § 4—

A child born to intestate's widow more than 280 days after intestate's death is presumed not to have been *en ventre sa mere* at the time of intestate's death, but this presumption may be rebutted by evidence tending to show that intestate was in fact the father of the child, although in the absence of such evidence the presumption is determinative.

6. Same: Evidence § 44—

Whether the term of pregnancy may extend 322 days or more from the moment of conception is a proper subject of testimony by qualified medical experts, and in a particular case, all relevant facts concerning the particular pregnancy may be considered by such experts as a basis for their opinions.

7. Descent and Distribution § 4—

Where the wife testifies that her husband was the father of her child, born more than 280 days after the husband's death, her testimony is sufficient evidence to require the submission to the jury of the question of whether the intestate was the child's father for the purpose of determining whether such child is entitled to a distributive share in the personalty of intestate, the burden of proof being upon such child to establish the affirmative of the issue by the greater weight of the evidence.

APPEAL by guardian *ad litem* for Sandra Louise Tolbert from *Olive, J.*, January 19, 1959, Term, of FORSYTH.

The administrator of the Estate of Ivison Jerome Tolbert brought this action for a judicial determination of this question: Is Sandra Louise Tolbert entitled to a child's share in the distribution of a fund of $10,666.67 recovered by plaintiff through compromise settlement of an action for the wrongful death of his intestate?

At the time of his death on May 10, 1957, as the result of a truck collision, Ivison Jerome Tolbert, plaintiff's intestate, was married to and living with defendant Ruby Rosalie Shirley Tolbert. He was survived by his widow, who was then thirty years of age, and by four children of their marriage, to wit, Mildred Viola Tolbert, born August 24, 1945, Josephine Annette Tolbert, born February 28, 1948, Glenda Sue Tolbert, born January 8, 1950, and Jerry Michael Tolbert, born October 7, 1952. These four children are represented herein by Weston P. Hatfield, Esq., their guardian *ad litem*.

On March 29, 1958, Ruby Rosalie Shirley Tolbert, the intestate's widow, gave birth to a daughter, whom she named Sandra Louise Tolbert. At birth, this child weighed seven pounds and two ounces. She is represented herein by Clyde C. Randolph, Jr., Esq., her guardian *ad litem*.

Upon these facts plaintiff alleged: ". . . it is necessary to have a judicial determination as to whether or not the child born more than ten lunar months from the death of Ivison Jerome Tolbert could be his child."

Ruby Rosalie Shirley Tolbert, the intestate's widow, filed no answer.

The guardian *ad litem* for the four children born prior to the intestate's death admitted plaintiff's factual allegations and then averred "that Sandra Louise Tolbert having been born more than ten lunar months from the death of Ivison Jerome Tolbert is not the child of Ivison Jerome Tolbert and thus is not entitled to take in distribution assets of his estate."

The guardian *ad litem* for Sandra Louise Tolbert admitted plaintiff's factual allegations; and, for a further answer, alleged "that the defendant, Sandra Louise Tolbert, who was born to the defendant, Ruby Rosalie Shirley Tolbert, on March 29, 1958, is the daughter of Ivison Jerome Tolbert, deceased, and as such is entitled to share in his estate."

At trial, the intestate's widow testified, without objection, that she was the mother of Sandra Louise Tolbert, who was born March 29, 1958, and that Ivison Jerome Tolbert, her husband, was the father of Sandra Louise Tolbert. There was no cross-examination.

The guardian *ad litem* for Sandra Louise Tolbert proffered, but the court excluded, testimony of Dr. Edward R. White, Jr., whom the court found to be a medical expert, specializing in internal medicine, tending to show that, under the admitted facts, Ivison Jerome Tolbert *could have been* the father of Sandra Louise Tolbert.

The guardian *ad litem* for Sandra Louise Tolbert tendered, but the court refused to submit, this issue: "Is Ivison Jerome Tolbert, deceased, the father of Sandra Louise Tolbert?"

The issue submitted, and answered "No" in accordance with the court's peremptory instruction, was as follows: "Was Sandra Louise Tolbert born within ten lunar months after the death of Ivison Jerome Tolbert?"

Thereupon, the court adjudged that Sandra Louise Tolbert was not entitled to a distributive share in the personal property of Ivison Jerome Tolbert, deceased, but that his distributees were his said widow and his said four children born prior to his death.

The guardian *ad litem* for Sandra Louise Tolbert excepted and appealed.

*Walser & Brinkley and Elledge & Mast for plaintiff, appellee.*

*Clyde C. Randolph, Jr., for defendant Sandra Louise Tolbert, appellant.*

*Weston P. Hatfield for defendants Mildred Viola Tolbert, Josephine Annette Tolbert, Glenda Sue Tolbert and Jerry Michael Tolbert, appellees.*

BOBBITT, J.   The jury's answer to the issue submitted simply declares a fact that is admitted by all parties.

The basic question is whether the fact that Sandra Louise Tolbert was born more than ten lunar months after the intestate's death establishes conclusively as a matter of law that she is not entitled to a child's share in the distribution of the intestate's estate. If not, appellant, upon offering evidence sufficient to warrant an affirmative answer, was entitled to have the issue he tendered submitted to the jury.

We need not consider whether the court erred in excluding the proffered testimony of Dr. White. If the issue tendered by appellant was appropriate, the widow's testimony was sufficient to warrant its submission to the jury.

Plaintiff's recovery for the wrongful death of his intestate, while not assets "in the usual acceptation of the term," *Lamm v. Lorbacher,*

235 N.C. 728, 71 S.E. 2d 49, is to be distributed as provided by G.S. Ch. 28 "for the distribution of personal property in case of intestacy." G.S. 28-173.

G.S. 31-45, in pertinent part, provides: "Children born after the making of the parent's will, and whose parent shall die without making any provision for them, shall be entitled to such share and proportion of the parent's estate as if he or she had died intestate, . . ."

G.S. 28-154 *et seq.*, relate to the payment or satisfaction of the share of such after-born child.

It is noteworthy that G.S. 31-45 and G.S. 28-154 were originally enacted as §§ 62 and 109, respectively, of Ch. 113, Public Laws of 1868-69. Their provisions disclose their interrelation.

These statutory provisions clearly assume and contemplate that an after-born child of an intestate shares in the estate, both real and personal, of such intestate.

No provision of G.S. Ch. 28 purports to restrict the distribution of the intestate's personal estate to an after-born child whose birth occurs within ten lunar months from the death of the intestate.

In *Hill v. Moore,* 5 N.C. 233, it was held that an infant *en ventre sa mere* when the father dies is entitled to a child's distributive share of the father's personal estate.

In *Grant v. Bustin,* 21 N.C. 77, *Gaston, J.,* said: ". . . . the rule . . . is that the *right* to the distributive share vests at the death of the intestate. (Citation) It is said the rule is liable to an exception in the case of a child in *ventre sa mere.* In truth, however, a child in *ventre sa mere* is held capable of taking a distributive share, because for all beneficial purposes it is in *rerum natura,* is regarded as actually *in esse.*"

The question in *Grant v. Bustin, supra,* was whether a half brother of the intestate, born ten months and a half after her death, was entitled, under the statute of distribution, to a share of *her personal estate* in common with her brothers and sisters living at her death. After stating that "one not in being, and not considered as in being at the death of an intestate, can, under the statute of distributions, prefer no claim to a share of that intestate's estate," the opinion concludes: "It is not stated in this case, nor can we infer from the facts set forth, that Benjamin Bustin was in *ventre sa mere* at the death of Patience Pitts, and we *therefore* hold that he was not entitled to the distributive share claimed for him in her personal estate." (Our italics) This decision was not based on, nor does the opinion refer to, the 1823 statute discussed below.

In *Grant v. Bustin, supra,* admittedly the intestate was the *half*

*sister* of the child (Bustin) born ten months and a half after the in-
testate's death. This child was entitled to share in the intestate's per-
sonal estate only if *en ventre sa mere* when she died. The decision is
authority for this proposition: In the absence of evidence that he was
*en ventre sa mere* when his half-sister died intestate, a child born ten
and a half months after her death is not entitled to share in the dis-
tribution of her personal estate.

G.S. Ch. 29, entitled "Descents," prescribes the rules of descent
"When any person dies seized of any inheritance, or of any right
thereto, or entitled to any interest therein, not having devised the
same."

Appellees rely on the portion of G.S. 29-1 reading as follows: "Rule
7, Unborn infant may be heir. No inheritance shall descend to any
person, as heir of the person last seized, unless such person shall be
in life at the death of the person last seized, or shall be born within
ten lunar months after the death of the person last seized."

Prior to the enactment of this statute, this Court, in *Cutlar v. Cut-
lar,* 9 N.C. 324, decided at June Term, 1823, held: "So in this State, if
the son purchases land and dies without issue, it descends for the
present upon the brothers and sisters then being, but if any are subse-
quently born they become equally entitled; and the same law must
prevail relative to half-blood where they are entitled to inherit." To
like effect: *Seville v. Whedbee,* 12 N.C. 160; *Caldwell v. Black,* 27
N.C. 463, 467. Under this rule when an intestate died without issue,
brothers and sisters of the intestate whether of the whole blood or of
the half blood, born after the death of the intestate, irrespective of
any time limitation, came in and shared with those in whom the in-
heritance vested temporarily at his death. 1 Mordecai's Law Lectures
646.

The common law rule as stated in *Cutlar v. Cutlar, supra,* was
changed by the 1823 statute now codified as G.S. 29-1, Rule 7. In
*Rutherford v. Green,* 37 N.C. 121, 125, this Court held that the pro-
visions of the 1823 statute "are altogether prospective and do not em-
brace the case of a descent from a person before that time dead."

Although referred to in *Rutherford v. Green, supra,* and elsewhere,
as "ch. 1210," we find this 1823 statute set forth as Ch. XXXII, Laws
of North Carolina, enacted by the General Assembly at its session
commencing November 17, 1823, in a volume containing the Laws of
North Carolina from 1817 to 1825. The wording of the 1823 statute
is identical with G.S. 29-1, Rule 7, with two exceptions: (1) The
original does not contain the caption, "Unborn infant may be heir."
(2) The original contains the words "ten months," not "ten lunar

months." The 1823 statute was entitled, "An Act to amend an Act, entitled 'An Act regulating descents,' passed in the year 1808."

It is noted that Ch. IV, Laws of 1808, entitled "An Act to Regulate Descents," established six rules "regulating the descent of inheritance," the first three relating to lineal descents and the last three relating to collateral descents. We are not now concerned with amendments from time to time in these six prior rules of descent. Since the Revised Code of North Carolina, 1854, the Act of 1823 has been codified as Rule 7, i.e., it follows immediately the three rules relating to descents of inheritances "on failure of lineal descendants." (Note: "Ten lunar months," in lieu of "ten months," appears in this and subsequent codifications.)

As stated by *Stacy, C. J.,* in *Trust Co. v. Hood, Comr. of Banks,* 206 N.C. 268, 173 S.E. 601: "The heart of the statute is the intention of the law-making body."

It appears probable that the purpose of the Act of 1823 was to change the common law rule so that the final vesting *of inheritances* would not be in suspense under the circumstances considered in *Cutlar v. Cutlar, supra.* When an intestate dies without issue the subsequent birth of brothers and sisters, either of the whole blood or of the half blood, might be reasonably expected to occur from time to time over a period of many years. While this is true as to collateral relationships, it is not true as to a child of the intestate. Birth of such child, *rerum natura,* will occur, if at all, within a comparatively short time after the intestate's death.

We need not decide whether G.S. 29-1, Rule 7, relates solely to the descent of *inheritances,* real property, *to collateral relations* "on failure of lineal descendants." It is sufficient for present purposes to hold that it does not relate to the distribution of an intestate's personal estate to an after-born child.

Appellees cite *Shinn v. Motley,* 56 N.C. 490, *Britton v. Miller,* 63 N.C. 268, *Deal v. Sexton,* 144 N.C. 157, 56 S.E. 691, and *Severt v. Lyall,* 222 N.C. 533, 23 S.E. 2d 829, in support of their contention.

In *Shinn v. Motley, supra,* the opinion of *Battle, J.,* contains this sentence: "The child of Nancy Furr, which was born within ten months after the death of the testator, is to be considered as having been then *in ventre sa mere,* and of course entitled as a child born at that time." However, the basis of decision was that the testator had expressly provided that after-born children (testator's grandchildren) should share.

In *Britton v. Miller, supra,* the facts and decision pertinent here were as follows: Upon the death of Margaret S. Britton in 1864, the

share of her real and personal property devised and bequeathed by her to the children of her brother Stephen W. Britton vested in Rosa Mary Britton, the only child of Stephen W. Britton born prior to the death of Margaret S. Britton. In September, 1864, after the death of Margaret S. Britton, Rosa Mary Britton, an infant, died; and upon her death her estate vested in Stephen W. Britton, her father. In 1866 or 1867, Margaret Britton, a daughter of Stephen W. Britton by a second marriage, was born. This Court held that Stephen W. Britton's estate, derived from Rosa Mary Britton, was not "divested out of the father by the birth of his daughter Margaret more than ten lunar months *after the death of Rosa Mary.* Rev. Code, ch. 38, Rule 7." (Our italics) Since no contention was made that Margaret was born or *en ventre sa mere* when Rosa Mary died, the reference to the statute, now G.S. 29-1, Rule 7, may not be regarded as the basis of decision.

In *Deal v. Sexton, supra,* the rule of descent was stated in these words: ". . . posthumous children inherit in all cases in like manner as if they were born in the lifetime of the intestate and had survived him, and for all the beneficial purposes of heirship a child *en ventre sa mere* is considered absolutely born." In the cited case, the child was born within four months of the father's death. The fact that the child was *en ventre sa mere* when the intestate died was not questioned. *Brown, J.,* referring to the statute now codified as G.S. 29-1, Rule 7, said: "The statute law of this State treats the unborn child in its mother's womb with the same consideration as if born." The cited case may not be considered authority for the proposition that a child born more than ten lunar months after the intestate's death is excluded as a matter of law from inheriting, that is, that such child is precluded from asserting and offering evidence tending to show that he was in fact *en ventre sa mere* when his father died.

In *Severt v. Lyall, supra,* the owner of land, subject to a life estate, died intestate, predeceasing the life tenant. After holding that his heirs were to be determined as of the date of *his* death, not the death of the life tenant, a further question was posed by these facts: When the intestate died, August 23, 1914, he was survived by two sisters of the whole blood. Thereafter, there were born to the intestate's father and his father's second wife four children, the plaintiffs, the eldest of whom was born in December, 1919. The opinion of *Barnhill, J. (later C. J.),* concludes: "It follows that the *feme* defendants, the nearest blood kin of Clarence Odell Severt, living at the time he died, acquired title by inheritance at his death. Plaintiffs cannot take as his heirs. They were not 'in life' at the time of the death of the re-

mainderman and were not born within ten lunar months thereafter. C.S. 1654, Rule 7." It seems clear that the Act of 1823, now G.S. 29-1, Rule 7, was enacted primarily, if not solely, to apply to a factual situation such as that presented in this case.

G.S. 41-5 provides: "An infant unborn, but in esse, shall be deemed a person capable of taking by deed or other writing any estate whatever in the same manner as if he were born."

G.S. 41-5 was considered in *Mackie v. Mackie*, 230 N.C. 152, 52 S.E. 2d 352, in relation to these facts: By deed dated July 16, 1894, John Mackie, Sr., conveyed certain land to his son, John Mackie, Jr., "for life and then to his children and their heirs and assigns." John Mackie, Jr., had no children when this voluntary conveyance was executed. A deed dated January 15, 1898, executed by John Mackie, Jr., et al., purported to revoke under G.S. 39-6 the future interests conveyed by his father's deed. The first child of John Mackie, Jr., was born June 9, 1898. This Court held that the purported deed of revocation was void. *Denny, J.,* for the Court, said: "Applying the law to the facts in this case, it is presumed that the child of John W. Mackie, Jr., who was born on 9 June, 1898, was conceived 280 days, or ten lunar months, prior to the date of his birth, *in the absence of evidence to the contrary,* and was therefore in being at the time the purported deed of revocation was executed on 15 January, 1898. *S. v. Forte, supra; S. v. Bryant,* 228 N.C. 641, 46 S.E. 2d 847; 16 Amer. Jur. 852." (Our italics)

In 16 Am. Jur., Descent and Distribution § 80, pp. 851-852, this statement appears: "Posthumous children, if born alive . . . inherit as they would have if they had been born in the lifetime of the intestate and had survived him, and they are in esse for the purpose of taking under the rule from the time of conception, the conception, for the purpose of the rule being presumed to be nine months before birth, but evidence to rebut the presumption is admissible."

In *S. v. Forte,* 222 N.C. 537, 23 S.E. 2d 842, and in *S. v. Bryant,* 228 N.C. 641, 46 S.E. 2d 847, what constituted in law or in fact the term of pregnancy was at most a subordinate circumstance bearing upon the primary issue. The sentence in *S. v. Forte, supra,* quoted in *S. v. Bryant, supra,* to wit, "And it is a matter of common knowledge that the term of pregnancy is ten lunar months, or 280 days," is to be understood as a general statement that, in the absence of evidence to the contrary, the term of pregnancy is presumed to be ten lunar months or 280 days.

It is noted that we are concerned here with a child born of the woman to whom the intestate was married and with whom he was

living at the time of his death. The question for decision is: When it is asserted on behalf of such child that the intestate was her father, does the fact that such child was born more than ten lunar months or 280 days after the intestate's death, standing alone, preclude the child *as a matter of law* from receiving a child's share in the distribution of the intestate's personal estate? Absent a statute so providing, the answer is, "No." Whether such child is the child of intestate is determinable as an issue of fact.

Whether, according to the laws of nature, the term of pregnancy may extend 322 days or more from the moment of conception, is a proper subject of testimony by qualified medical experts. In determining whether such prolonged term of pregnancy occurred in a particular case, all relevant facts concerning the particular pregnancy would seem an essential basis for opinion evidence by qualified medical experts.

The applicable rule is this: If, under such circumstances, a child is born more than ten lunar months or 280 days after the death of the intestate, the presumption is that the child was not *en ventre sa mere* when the intestate died. In the absence of evidence to the contrary, this presumption is determinative; but this presumption may be rebutted by evidence tending to show that intestate was in fact the father of the child. Thus, when the issue is raised, the burden of proof rests upon such child to establish by the greater weight of the evidence that the intestate was the father.

The rule stated requires that a new trial be awarded. Sandra Louise Tolbert was entitled, upon the testimony of her mother, to have submitted the issue tendered in her behalf, to wit, "Is Ivison Jerome Tolbert, deceased, the father of Sandra Louise Tolbert?"

New trial.