GEORGE GIFFEN SEARCY, BY HIS GUARDIAN AD LITEM, GREGORY W. SCHIRO v. GEORGE GIFFEN JUSTICE
— AND —
ANNETTE SEARCY LEVI v. GEORGE GIFFEN JUSTICE

No. 7421DC31

(Filed 6 February 1974)

1. Bastards § 10.5— action to establish paternity — instructions — period of gestation
    The trial court in an action to establish paternity brought pursuant to G.S. 49-14 erred in charging the jury that the person who had intercourse with plaintiff ten lunar months before the birth of her child would be the father of her child since the court ignored the possibility of a premature birth or an unusually long pregnancy; furthermore, the court expressed an opinion on the evidence in relating such erroneous statement to the testimony of the plaintiff.

2. Bastards § 10.5; Trial § 36— action to establish paternity — charge on reasonable doubt — expression of opinion
    The trial judge in a paternity action expressed an opinion on the evidence in his charge on reasonable doubt when he instructed the jury that it should not go outside the evidence to imagine doubt to render a verdict in favor of defendant without also instructing the jury that it could not render a verdict for plaintiff on mere surmise or conjecture.

3. Bastards § 10.5; Trial § 36— action to establish paternity — character of the parties — expression of opinion in the charge
    The trial judge in a paternity action expressed an opinion on the evidence in instructing the jury that defendant could be the father of plaintiff's child even if plaintiff were of bad character and defendant were of good character without also instructing the jury that someone other than defendant could be the father even if plaintiff were of good character and defendant's character were bad. G.S. 1A-1, Rule 51(a).

4. Bastards § 10.5; Trial § 36— action to establish paternity — instructions arousing sympathy for plaintiff — expression of opinion
    The trial court in a paternity action expressed an opinion on the evidence in instructing the jurors that if they found defendant to be

the father of plaintiff's child, plaintiff could be awarded payments for support of the child, whereas if they returned a verdict for defendant, plaintiff would be entitled to nothing, since the instructions tended to arouse sympathy for plaintiff and to encourage the jurors to reach a verdict for plaintiff because of their belief that someone should be responsible for support of the child.

**5. Bastards § 10.5; Trial § 36— unequal stress to plaintiff's evidence**

The trial judge in a paternity action expresseed an opinion on the evidence when he discussed plaintiff's evidence carefully and at length but used only two sentences in summarizing defendant's evidence where each party offered approximately the same amount of testimony.

**6. Criminal Law § 70; Evidence § 27— tape recordings**

Tape recordings, if audible and properly authenticated, may be used as substantive evidence.

**7. Criminal Law § 70; Evidence § 27— tape recordings**

Whether a tape recording is sufficiently audible to be admitted in evidence is largely a matter for the discretion of the trial court.

**8. Criminal Law § 70; Evidence § 27— tape recordings**

A tape recording should not be excluded merely because parts of it are inaudible if there are other parts than can be heard; nor should a tape be excluded on the ground that it cannot be heard by all twelve jurors at the same time since the court should have the jurors take turns sitting next to the machine and play the tape over again until all have heard it.

APPEAL by defendant from *Henderson, Judge,* 4 June 1973 Session of District Court held in FORSYTH County.

Plaintiff Annette Searcy Levi brought this action under G.S. 49-14 and 49-15 to establish the paternity of her illegitimate son, George Giffen Searcy, and to obtain support payments. Her eight-year-old son acting through a guardian ad litem brought a similar action, and the two cases were consolidated for trial.

Plaintiff offered evidence that her son was born on August 26, 1964, and that she did not have sexual intercourse with anyone other than defendant from October 1963 until 1970. Defendant's evidence tended to show that plaintiff had sexual relations with five other men during the latter part of 1963.

Defendant offered in evidence a tape recording of a conversation between himself and plaintiff in which plaintiff is alleged to have admitted that she had intercourse with five men besides defendant during the last three months of 1963. The court refused to admit the tape recording into evidence.

Each of the parties presented evidence tending to show that his own character was good and that the character of the other party was bad.

The jury found that defendant was the father of George Giffen Searcy. From judgment declaring defendant the father of George Giffen Searcy and awarding support payments, defendant appealed.

*Randolph & Randolph, by Clyde C. Randolph, Jr., for plaintiff appellees.*

*Francis M. Coiner and Arthur J. Redden for defendant appellant.*

BALEY, Judge.

Defendant contends that the trial court on several occasions violated Rule 51(a) of the North Carolina Rules of Civil Procedure by expressing an opinion in his instructions to the jury. Defendant also assigns as error the failure of the court to admit in evidence the tape-recorded conversation between himself and plaintiff. Defendant's assignments of error relating to the charge are well founded and entitle him to a new trial, and thus it is unnecessary for this Court to decide whether the tape recording was properly excluded.

Under Rule 51(a) the trial judge may not express an opinion, either directly or by implication, in favor of any party at any stage of the trial. *Stanback v. Stanback,* 270 N.C. 497, 155 S.E. 2d 221; *State v. Belk,* 268 N.C. 320, 150 S.E. 2d 481; *Worrell v. Credit Union,* 12 N.C. App. 275, 182 S.E. 2d 874. "The trial judge occupies an exalted position. Juries entertain great respect for his opinion, and are easily influenced by any suggestion coming from him. As a result, he must abstain from conduct or language which tends to discredit or prejudice [any party] or his cause with the jury." *State v. Carter,* 233 N.C. 581, 583, 65 S.E. 2d 9, 10.

[1] The court's charge to the jury included the following instruction: "The person who had intercourse with the plaintiff, Annette Searcy Levi ten lunar months before August the 26, 1964 biologically would be the father of this child." This statement is innaccurate, because the term of pregnancy is not always exactly ten lunar months; in some cases it may be substantially

longer or shorter. "There is neither medical nor legal agreement as to the period of gestation in human beings. The period is apparently not the same for all women, varying even in the different pregnancies of the same woman." 3 Lee, N. C. Family Law, § 250, at 191-92; *see Byerly v. Tolbert*, 250 N.C. 27, 108 S.E. 2d 29; *cf. State v. Key*, 248 N.C. 246, 102 S.E. 2d 844. In flatly asserting that the person who had intercourse with plaintiff ten lunar months before the birth of her child would be the father of her child, the court ignored the possibility of a premature birth or an unusually long pregnancy.

But what is far more prejudicial, the court then related this improper statement to the testimony of plaintiff by charging:

"Now she testified that she dated the defendant from August 1963 until October 1970, that she neither dated nor had intercourse with any other man during that time, as the Court remembers her testimony. The defendant, on the other hand says that she told him of five men that she had had intercourse with during this interim we're talking about. Now as the Court recalls, no person who has gone upon the stand has testified that any person had intercourse with the plaintiff ten lunar months before the birth of this child on August the 26, 1964. The plaintiff contending that she had intercourse with the defendant, all along and had intercourse with no one else and that the defendant, therefore, was father of the child."

The implication is inescapable that in the opinion of the court more weight should be attached to the testimony of plaintiff than to the evidence submitted by defendant.

[2] An additional violation of Rule 51 (a) involved the court's charge on reasonable doubt. G.S. 49-14 provides that in a civil action to establish paternity, proof of paternity must be beyond a reasonable doubt. The trial court defined reasonable doubt in the following manner:

"The Supreme Court of North Carolina, in a case filed on the eleventh day of April, 1973, a recent case, has attempted to again define reasonable doubt. The Court says this: The phrase reasonable doubt means just what the words imply. It is a doubt based upon reason arising from a thorough and impartial consideration of all of the evidence in the case or lack of evidence as the case may be.

"This, of course, is a criminal case in which reasonable doubt is being defined. It says this: Neither should you go outside the evidence to imagine doubt to justify an acquittal.

"The Court would instruct you that you shouldn't go outside of the evidence in this case to imagine doubt to render a verdict in favor of the defendant and against the plaintiff."

The case to which the court was referring was *State v. Mabery,* 283 N.C. 254, 195 S.E. 2d 304. In that case the Supreme Court approved an instruction on reasonable doubt containing the following sentence: "While you cannot convict the defendant on mere surmise or conjecture, neither should you go outside the evidence to imagine doubt to justify an acquittal." The first part of this sentence is favorable to the defendant; the last part is favorable to the State, or in a paternity case, to the plaintiff. The trial judge in the present case quoted the last part of the sentence, but he ignored the first part. As a result, his instruction on reasonable doubt was unduly weighted in favor of plaintiff.

[3]   The instruction on character evidence was similarly unbalanced. On this subject the court charged as follows:

"Character evidence as the Court understands it, goes to the veracity of the person testifying in a case. Certainly because a man has a good character would not be substantive evidence on which this issue might be answered. Since that question has come up, I will say this: if, indeed the plaintiff, Annette Searcy Levi is a person of bad character does not mean that the defendant, if you find him to be a person of good character could not father her a baby which was born on August 26, 1964."

The court did not instruct the jury that someone other than defendant could have been the father of plaintiff's child even if plaintiff were of good character and defendant's character were bad. Instead of being a neutral statement of the law, the instruction was entirely favorable to plaintiff. A juror listening to it could easily have concluded that the court felt that defendant's character evidence was irrelevant and unimportant and should be ignored.

[4]   Another violation of Rule 51(a) occurred in the court's instructions on the results that would follow from the jury's

verdict. The judge discussed this subject extensively and pointed out to the jurors that if they found defendant to be the father of plaintiff's child, plaintiff could be awarded payments for the support of the child, whereas if they returned a verdict for defendant, plaintiff would be entitled to nothing. The instructions were worded in such a way as to arouse sympathy for plaintiff and encourage the jurors to reach a verdict for plaintiff because of their belief that someone should be responsible for the support of the child. This is not an appropriate basis for the jury's decision. In actions under G.S. 49-14, the jury decides only the factual issue of paternity, and the court decides what payments should be awarded for the support of the child. The jurors should be concerned only with the facts and evidence before them, and they should not be encouraged to speculate on matters not presented to them. *Cf. State v. Davis,* 238 N.C. 252, 77 S.E. 2d 630.

[5]   Finally, Rule 51(a) requires that the judge "give equal stress to the contentions of the various parties" in recapitulating the evidence presented at the trial. He may not set forth one side's evidence fully and in detail while briefly glancing over the evidence produced by the other party. *See Key v. Welding Supplies,* 273 N.C. 609, 160 S.E. 2d 687; *Pressley v. Godfrey,* 263 N.C. 82, 138 S.E. 2d 770; *Brannon v. Ellis,* 240 N.C. 81, 81 S.E. 2d 196. In this case the judge discussed plaintiff's evidence carefully and at considerable length, but in summarizing the evidence for defendant he used only two sentences. This disparity cannot be explained, as in cases such as *State v. Jessup,* 219 N.C. 620, 14 S.E. 2d 668, and *State v. Crutchfield,* 5 N.C. App. 586, 169 S.E. 2d 43, by the fact that defendant produced little or no evidence; here each party offered approximately the same amount of testimony. The court's failure to stress each party's evidence equally constitutes a violation of Rule 51(a).

[6-8]   Since defendant must be granted a new trial, it is not necessary to decide whether the court should have admitted into evidence the tape-recorded conversation between plaintiff and defendant. However, it may be appropriate to make the following observations in order to avoid any error on retrial. Tape recordings, if audible and properly authenticated, are admissible in evidence. *State v. Lynch,* 279 N.C. 1, 181 S.E. 2d 561; *Hicks v. Hicks,* 271 N.C. 204, 155 S.E. 2d 799; *State v. Knight,* 261 N.C. 17, 134 S.E. 2d 101. They may be used as substantive evidence, and not merely to illustrate or corroborate the testi-

mony of a witness. *State v. Lynch, supra.* Whether a tape re-cording is sufficiently audible to be admitted is largely a matter for the discretion of the trial court. *Johns v. United States,* 323 F. 2d 421 (5th Cir. 1963) ; *Monroe v. United States,* 234 F. 2d 49 (D.C. Cir.), *cert. denied,* 352 U.S. 873 (1956) ; *State v. Prokopiou,* 8 Utah 2d 259, 332 P. 2d 980 (1958). However, a tape should not be excluded merely because parts of it are inaudible if there are other parts that can be heard. *United States v. Hall,* 342 F. 2d 849 (4th Cir.), *cert. denied,* 382 U.S. 812 (1965) ; *People v. Jackson,* 125 Cal. App. 2d 776, 271 P. 2d 196 (1954) ; *Gomien v. State,* 172 So. 2d 511 (Fla. App. 1965) ; *Lynch v. State,* 2 Md. App. 546, 236 A. 2d 45 (1967), *cert. denied,* 393 U.S. 915 (1968) ; *State v. Spica,* 389 S.W. 2d 35 (Mo. 1965), *cert. denied,* 383 U.S. 972 (1966). Neither should a tape be ex-cluded on the ground that it cannot be heard by all twelve jurors at the same time, which appears to be the basis upon which it was excluded by the trial court. If the tape can be heard and understood by the jurors sitting nearest to the tape recorder, but not by all twelve, the court should simply have the jurors take turns sitting next to the machine, and play the tape over again until all have heard it. *See generally* Annot., 10 L.Ed. 2d 1169 (1963) ; Annot., 58 A.L.R. 2d 1024 (1958).

Because of the errors in the court's charge, there must be a

New trial.

Judges CAMPBELL and HEDRICK concur.