SUSAN W. (HARTSOG) BULLOCK, EXECUTRIX OF THE ESTATE OF RALPH HARTSOG v. THE INSURANCE COMPANY OF NORTH AMERICA

SUSAN W. (HARTSOG) BULLOCK, EXECUTRIX OF THE ESTATE OF RALPH HARTSOG v. MURRAY M. WHITE, JR., MURRAY M. WHITE, INC., A CORPORATION, AND INSURANCE COMPANY OF NORTH AMERICA

No. 7818SC145

(Filed 16 January 1979)

**1. Evidence §§ 22, 33— evidence at former trial—no opportunity to cross-examine witness—evidence properly excluded on retrial**

In the second trial of an action to recover under an insurance policy issued by defendant where defendant contended that the policy was not in ef-

fect at the time of the plane crash because the insured named in the policy did not possess an insurable interest in the airplane, testimony by a witness, who was an employee of the seller, at the first trial as to what the pilot of the plane told him would have been admissible at the second trial and would not have been excluded as hearsay, since the pilot's statement was not offered to prove the truth of the matter asserted therein, i.e., whether the pilot was going to fly the airplane or in fact made the flight, but instead the statement that the pilot "was going to fly his schedule" was offered as tending to show his intent to take the airplane for his normal use as pilot for his employer, and his intent at that time was relevant in determining whether the manner in which he took possession was such as would work a transfer of ownership and of an insurable interest; however, the trial court correctly excluded a transcript of the former testimony during the second trial since, at the first trial, the testimony was placed in the record after defendants' objection was sustained, and the defendants therefore did not have a *reasonable* opportunity to cross-examine the witness at the former trial.

2. **Rules of Civil Procedure § 26— no finding that deponent dead—deposition properly excluded**

In the absence of a finding that the deponent was dead, the trial court did not err in excluding portions of the deposition in question. G.S. 1A-1, Rule 26(d).

3. **Insurance § 147.1— aviation liability insurance—erroneous instruction**

In an action to recover under an insurance policy where the evidence tended to show that plaintiff's testator's employer negotiated with Air Services to buy an airplane and obtained insurance on that plane, but the crash in question occurred while the insured plane was being repaired and plaintiff was flying in a replacement plane supplied by Air Services, the trial court erred in allowing the jury to consider evidence that Air Services had purchased insurance covering the plane which crashed in determining whether testator's employer had an insurable interest in the plane which was being repaired, since there was no logical nexus between the two facts.

APPEAL by plaintiff from *Browning, Judge.* Judgment entered 15 August 1977 in Superior Court, GUILFORD County. Heard in the Court of Appeals sitting in Winston-Salem 15 November 1978.

This action was originally brought by the representatives of the estates of four deceased employees of Knit-Away, Inc., who were killed in an airplane crash. The plaintiffs sought to recover benefits under an insurance policy issued by the defendant, The Insurance Company of North America [hereinafter "INA"]. INA denied its liability under the policy. It contended that the policy was not in effect at the time of the crash because the insured named in the policy did not possess an insurable interest in the

airplane. A trial was held and, at the conclusion of the plaintiff's evidence, the defendant moved for a directed verdict. The trial court granted the motion and the plaintiffs appealed. This Court found that the plaintiffs had presented sufficient evidence to overcome the motion for a directed verdict and reversed the judgment of the trial court. *Norris v. Insurance Co.*, 26 N.C. App. 91, 215 S.E. 2d 379 (1975).

Prior to the case again being called for trial, three of the plaintiffs entered into a settlement with INA. The remaining plaintiff, Susan W. (Hartsog) Bullock, executrix of the estate of Ralph Hartsog, continued to trial. An additional action which she had initiated against the defendant Murray M. White, Inc., the agency which had sold the policy, and the defendant Murray M. White, Jr., the individual agent who had handled the transaction, was consolidated for trial with the prior action. At the close of the plaintiff's evidence, the trial court granted a directed verdict in favor of Murray M. White, Jr., the individual insurance agent. The plaintiff did not except. At the close of all of the evidence, the jury received its instructions from the trial court and thereafter returned a verdict in favor of the defendants. Judgment was entered in accordance with the verdict and, from the entry of that judgment, the plaintiff appealed.

The plaintiff presented evidence at the second trial tending to show that, during late August of 1971, Knit-Away, Inc., began negotiating with Air Service, Inc., for the purchase of an airplane. It was decided that Richard Bruce, the president of Knit-Away, would purchase an airplane and lease it to Knit-Away. On 14 October 1971, Air Service completed a purchase order for an aircraft described therein as a Model 58 Baron Beechcraft bearing F.A.A. Registration No. N9280Q. The purchase price was $116,650. Bruce signed the purchase order on 21 October 1971 and gave Air Service his personal check for $5,000. The airplane was then in the possession of Air Service. Bruce left the airplane with Air Service in order that additional equipment could be installed. Air Service indicated that the airplane would be ready on 24 November 1971. Bruce contacted the defendant, Murray M. White, Jr., to arrange for insurance coverage to begin at that time. White in turn contacted the defendant INA which issued a policy that indicated on its· face that it was effective from 24 November 1971 to 24 November 1972. The policy covered a 1972

Beechcraft Baron N9280Q [hereinafter "N9280Q"]. In addition to coverage for N9280Q, the policy provided coverage for substitute aircraft as specified in paragraph 10 of the policy:

> While the aircraft described in this policy is withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction, such insurance as is afforded under Coverages D, E, F, G and H of this policy with respect to another fixed wing aircraft, certified by the Federal Aviation Agency and of no greater seating capacity, not owned by the named insured, while temporarily used as the substitute for such aircraft.

The policy provided protection against liability claims and against damage to the airplane itself. It also contained an admitted liability endorsement which, in effect, allowed the estate of a passenger killed in an aircraft covered by the policy to accept a specified amount as a death benefit in lieu of prosecuting a wrongful death claim based upon negligence.

On 24 November 1971, the date the insurance policy was to become effective, Air Service had not completed installation of the additional equipment in N9280Q, and the airplane remained in the possession of Air Service. On 6 December 1971, Marshall Parker, an employee of Knit-Away who had been hired to pilot N9280Q, was informed by an employee of Air Service that the airplane would be ready the following day. On 7 December 1971, Mr. Parker received N9280Q from Air Service and flew it away from the airport where it had been located since Bruce had signed the purchase order. At that time all requested equipment had been installed and no restrictions were placed upon Parker's use of the airplane. N9280Q was, however, again on the premises of Air Service on 9 December 1971. Air Service installed a radio master switch and modified a microphone circuit in N9280Q on 10 December 1971. The radio master switch was not a part of the originally requested equipment and the circuit had to be modified in order to accept Parker's personal microphone. While this work was being done, Air Service loaned its 1962 Beechcraft Baron N4877J [hereinafter "N4877J"] to Knit-Away. On 13 December 1971, Parker was flying N4877J when it crashed killing the plaintiff's testator Ralph Hartsog, two other employees of Knit-Away and Parker.

The defendant presented evidence tending to show that Bruce, the president of Knit-Away, had secured a commitment from a bank to finance the purchase of N9280Q but had never consummated the loan. The defendants also prsented evidence tending to show that Bruce did not list N9280Q as an asset on a financial statement which he signed after the crash of N4877J.

Additional facts pertinent to this appeal are hereinafter set forth.

*Smith, Patterson, Follin, Curtis, James & Harkavy, by J. David James, John R. Kernodle and Norman B. Smith, for plaintiff appellant.*

*W. F. Maready, James H. Kelly, Jr., and W. Thompson Comerford, Jr., for defendant appellee The Insurance Company of North America.*

*Teague, Johnson, Patterson, Dilthey & Clay, by Grady S. Patterson, Jr., Robert W. Sumner, and Alene Mercer, for defendant appellee Murray M. White, Inc.*

MITCHELL, Judge.

The plaintiff assigns as error the failure of the trial court to allow her to introduce into evidence portions of a deposition of Richard Austin, an employee of Air Service, and portions of the testimony of Austin given at the former trial of this action. Prior to the first trial of this action, a deposition of Austin was taken. Both the plaintiff and the defendant INA were represented by counsel at the taking of Austin's deposition, but the defendants Murray M. White, Inc., and Murray M. White, Jr., were not. During the taking of his deposition, Austin was asked whether he had personal knowledge as to why N9280Q was removed from the premises of Air Service on 6 or 7 December 1971. Austin replied, "To my knowledge, it was the intention of the pilot to place the airplane in service." When asked whether his answer was based upon personal knowledge, Austin explained, "Marshall Parker took the airplane and told me he was going to fly his schedule the next day in the airplane."

Thereafter, during the first trial, Austin was asked on direct examination by the plaintiffs whether Parker had made any

statement with respect to his intentions to use N9280Q. The defendants' objection to this question was sustained. Austin was then allowed to answer the question for the record and out of the presence of the jury. He responded, "Mr. Parker told me when he left Greensboro on Tuesday afternoon he was going to fly his trip in the airplane the next morning."

Austin apparently died at sometime between the first trial and the second trial which resulted in this appeal. Therefore, it was necessary for the plaintiff to read a transcript of Austin's former testimony into evidence at the second trial in order to introduce evidence of certain facts known only to Austin. The trial court allowed the plaintiff to read most of the transcript of Austin's former testimony but ruled that the portion of the transcript which dealt with Parker's statement to Austin was inadmissible. The trial court also ruled that evidence to the same effect in Austin's deposition was inadmissible. The plaintiff excepted to these rulings.

[1]   In order to determine the correctness of these rulings by the trial court, we must first determine whether the pilot Parker's statement to Austin would have been admissible had Austin been present and testified at the second trial. The defendants contend that the hearsay rule prohibited Austin from giving testimony concerning Parker's statement. We do not agree.

A statement is hearsay evidence if it was made out of court by someone other than the witness testifying and is used to prove the truth of the matter asserted within the statement. McCormick, Evidence § 246 at 584 (2d ed. 1972). Even though a statement is made out of court by someone other than the witness, however, it is not hearsay if used to prove anything other than the matter asserted in the statement. 1 Stansbury's N.C. Evidence, §§ 138, 141 (Brandis Rev. 1973); 6 Wigmore, Evidence § 1766 (Chadbourn Rev. 1976); McCormick, Evidence, § 249 (2d ed. 1972). The hearsay rule does not apply to testimony of an out-of-court statement by one other than the witness testifying when the testimony is offered as proof that the statement was in fact made rather than as proof of the truth of the facts asserted in the statement. *Wilson v. Indemnity Co.*, 272 N.C. 183, 158 S.E. 2d 1 (1967); *In re Will of Duke*, 241 N.C. 344, 85 S.E. 2d 332 (1955);

*State v. Dilliard,* 223 N.C. 446, 27 S.E. 2d 85 (1943); *State v. Griffis,* 25 N.C. 504 (1843).

Here, Parker's statement was not offered to prove the truth of the matter asserted therein. It was offered instead to prove that, when possession of N9280Q was transferred from Air Service to Parker, the transfer was not for the purpose of a test flight but a delivery of the airplane for normal use. That is to say, Parker's statement was not being used to show whether he was going to fly the airplane or in fact made the flight. Rather, the statement that "he was going to fly his schedule" was offered as tending to show his manifest intent at the time he took possession of the airplane that he take that possession for his normal use as pilot for Knit-Away. His intent at that time was relevant in determining whether the manner in which he took possession was such as would work a transfer of ownership and of an insurable interest. If the airplane was delivered to Parker at the time he made the statement, his subsequent actions or statements concerning the airplane would not make testimony as to that statement inadmissible, as Parker could not later revoke a prior transfer of ownership by deciding not to make the flight. Therefore, Austin could have testified to Parker's statement at the time Parker accepted the airplane without violating the hearsay rule.

Having determined that Austin's testimony as to Parker's statement would have been competent had Austin been available to testify, we must consider whether that testimony was competent when presented in the form of Austin's testimony admitted at a former trial. One requirement for the admission of former testimony is that the party against whom the testimony is offered or a like party in interest must have had a reasonable opportunity to cross-examine the witness at the former trial. *Bank v. Motor Co.,* 216 N.C. 432, 5 S.E. 2d 318 (1939). Although actual cross-examination is not unnecessary, the decision not to cross-examine must be meaningful in light of the circumstances which prevailed when the former testimony was offered. McCormick, Evidence, § 255 at 616 (2d ed. 1972). During the first trial the defendants objected to Austin's testimony concerning Parker's statement. After the objection was sustained, the plaintiffs asked that the answer of the witness be admitted for the record. When the answer was admitted for this purpose only, the defendants had no reason to

cross-examine Austin. The defendants' objection had already been sustained and the testimony was not admitted into evidence before the jury. Under these circumstances, the defendants did not refrain from cross-examining Austin for tactical purposes. Rather, the fact that the testimony had already been ruled inadmissible made cross-examination purposeless. Therefore, neither the defendant nor a like party in interest had a *reasonable* opportunity to meaningfully cross-examine the witness at the former trial, and the trial court correctly excluded the former testimony during the second trial.

[2] The admissibility of a deposition is, however, governed by other rules. A deposition may be used against any party who was present or represented at the taking of the deposition if the court finds that the deponent is dead. G.S. 1A-1, Rule 26(d). Parker's statement as related by Austin in his deposition would, therefore, have been admissible if the trial court had found that Austin was dead at the time of trial. However, as no such finding appears in the record on appeal, we cannot say that the trial court erred in excluding from evidence the portions of Austin's deposition in question.

The plaintiff next assigns as error the failure of the trial court to admit into evidence one sentence of a memorandum prepared by Air Service which states: "We have sold Baron N9280Q to Mr. Dick Bruce of Knit-Away, Inc., Raeford, North Carolina." During the first trial of this action, the plaintiff sought to introduce this evidence during the testimony of Austin. At the second trial, that portion of Austin's former testimony which had been admitted into evidence at the first trial was read to the jury, but that portion of his testimony which was excluded at the first trial, including the quoted portion of the memorandum in question, was not admitted into evidence. Although a statement made by the plaintiff's attorney at the first trial seeking to have the entire memorandum admitted into evidence was read into the record during the second trial, the plaintiff did not properly seek to have the quoted portion of the memorandum in question introduced during the second trial. Therefore, there was no adverse ruling upon the admissibility of this evidence at the second trial, and the plaintiff has no ground upon which to base this assignment of error. The assignment of error is overruled.

[3]   The plaintiff additionally assigns as error the trial court's instruction to the jury that it could consider evidence that the crashed airplane N4877J was insured at the time of the crash for the purpose of determining whether Bruce, the president of Knit-Away, had an insurable interest in N9280Q. In this regard, the trial court instructed the jury that:

> As I instructed you, Mr. Bruce and/or Knit-Away must have had an insurable interest in the airplane 9280Q for the policy of insurance under which the plaintiff seeks to recover to have been effective on the date of the crash. In addition to determining whether Mr. Bruce owned the airplane 9280Q on the date of the crash; that is, December the 13th, 1971, which would have given him an insurable interest in the aircraft, you may also consider the evidence that the aircraft number N4877J was insured with a policy of insurance at the time of the crash solely for the purpose of determining whether Mr. Bruce of Knit-Away had an insurable interest in the aircraft 9280Q.

In support of her assignment of error, the plaintiff contends that the charge was erroneous, as evidence of an insurance policy covering N4877J is not logically relevant to a determination of whether Bruce had an insurable interest in N9280Q. We agree.

During the second trial, Murray M. White, Jr., testified that Air Service had purchased an insurance policy covering N4877J which crashed. Although this evidence might have been relevant for other purposes, it did not tend to establish or negate the fact that Bruce had an insurable interest in N9280Q. Air Service's right to insure N4877J which crashed was completely independent of Bruce's right to insure the plane which he was purchasing. The fact that Air Service purchased insurance covering N4877J might tend to show that Air Service had a property interest in that airplane or that they wished to protect themselves from liability arising out of its operation or maintenance. However, such evidence did not tend to establish or negate the possibility that Bruce had an insurable interest in N9280Q, an entirely different piece of property. There simply is no logical nexus between evidence that N4877J was insured at the time of the crash and the possession *vel non* by Bruce of an insurable interest in N9280Q. Therefore, the quoted portion of the trial court's instructions to the jury constituted error.

We cannot say that the error in the trial court's instructions was harmless. As the trial court allowed the jury to consider evidence of one fact to determine the existence or nonexistence of another when no logical nexus existed between the two, the jury's determination of the issues submitted to them may have been based upon the improper consideration of evidence of the existence of another policy of insurance on N4877J which crashed. In our view this could have had a substantial impact influencing the outcome of the case. As we find the challenged portion of the instructions to the jury both erroneous and prejudicial, a new trial will be required.

We note that the plaintiff did not except to the trial court's judgment dismissing the action against Murray M. White, Jr., individually, and that judgment is not before us for review on appeal. The plaintiff has presented other assignments of error, however, which we find it unnecessary to discuss here as they are not likely to arise should this case be tried again.

For the reasons previously indicated, the judgment is vacated and the cause remanded for a

New trial.

Judges CLARK and WEBB concur.