MACK FINANCIAL CORPORATION v. HARNETT TRANSFER, INC.

No. 7826DC857

(Filed 3 July 1979)

1. **Evidence § 34.2— purchase of trucks—inflated price to cover previous bill— admission—no compromise offer**

In an action to recover $4000 for repairs made to a truck owned by one of defendant's drivers where defendant claimed that it was not responsible for the bill, the trial court properly allowed into evidence testimony that the president of defendant, in negotiating for the purchase of two trucks from plaintiff's assignor, suggested that, when financing for the purchase of the trucks was being arranged, the assignor raise the price of each of the trucks by $2000 and apply the extra $4000 from the sale against the outstanding repair bill, since such testimony established an admission by defendant's president that, at the time he made the statements, he considered himself liable for the debt involved in this case; furthermore, the evidence was not excludable as an offer to compromise since the amount of the repair bill was $4025.71, and it would be unrealistic to assume that an offer to pay $4000 was a compromise offer.

2. **Contracts § 27.1— existence of contract—sufficiency of evidence**

In an action to recover $4000 for repairs made to a truck owned by one of defendant's drivers, evidence was sufficient to show a contract between defendant and plaintiff's assignor where the evidence tended to show that defendant's president telephoned plaintiff's assignor and told him that the truck was being towed in, that his business was flourishing and he needed the truck repaired as quickly as he could get it back on the road; after the repairs had been completed, defendant's president told the manager of plaintiff's assignor that he would pay for the repairs and even instructed him as to where to send the bill; and defendant's president discussed paying for the repairs with the business manager of plaintiff's assignor fifteen to twenty times and stated that he was going to pay the bill as soon as he could.

3. **Frauds, Statute of § 5— repairs to truck—no promise to pay for debt of another**

In an action to recover $4000 for repairs made to a truck, there was no merit to defendant's contention that its promise to pay for the repairs was barred by G.S. 22-1 as being an unwritten promise to pay the debt of another, since the evidence disclosed that the bill defendant promised to pay belonged to defendant only and not to defendant's driver, the owner of the truck.

**4. Uniform Commercial Code § 8— repair to truck—parts required—no sale of goods—statute of frauds inapplicable**

　　In an action to recover $4000 for repairs made to a truck, there was no merit to defendant's contention that any contract for parts used in the repair of the truck was rendered unenforceable by the statute of frauds provision of G.S. 25-2-201 pertaining to the sale of goods, since the contract in the present case was for services, and the fact that various parts were also required to repair and service the truck properly was merely incidental to the repair contract.

**5. Evidence §§ 33.1, 46— written notations on invoice—handwriting authenticated —no hearsay**

　　In an action to recover for the cost of repairs to a truck, the trial court did not err in allowing plaintiff to introduce into evidence a duplicate invoice from its assignor which had some handwritten notations on it, since the writing was sufficiently authenticated by the owner of the truck which was repaired, and since the handwriting on the invoice did not render the exhibit inadmissible on the basis of hearsay, as the handwriting was not offered to prove the truth of the matter asserted therein, but was offered only for the purpose of showing that the statements had been made.

**6. Trial § 36— instruction to examine exhibit carefully—no comment on evidence**

　　The trial court's instruction to the jury to examine plaintiff's exhibit "very carefully" did not constitute an improper comment as to the probative force of the evidence.

**7. Contracts § 28— quantum meruit—no instruction given—amount of damages—instruction proper**

　　Where defendant's president telephoned plaintiff's assignor and specifically requested that a truck be repaired, asked that the bill be sent to him, and stated that he would pay the bill as soon as he could, the trial court did not err by instructing the jury only as to express contracts and not instructing or submitting an issue as to *quantum meruit*; furthermore, the court did not err in instructing the jury that they should award plaintiff damages of $4025.71 if they believed the evidence with respect to costs of labor and materials, since the evidence tended to show that defendant was billed for that amount, discussed the bill numerous times with plaintiff's assignor, and never questioned the amount of the bill.

　　APPEAL by defendant from *Lanning, Judge.* Judgment entered 17 April 1978 in District Court, MECKLENBURG County. Heard in the Court of Appeals on 30 May 1979.

　　This is a civil action wherein plaintiff seeks to recover $4,389.07 plus interest on an account assigned to it for collection by Brockway Motor Trucks, a division of Mack Financial Corporation, for repairs made by Brockway on a Kenworth truck

owned by Billy Lee. Defendant denied liability for the account by Answer filed 7 December 1976.

Plaintiff presented evidence tending to show the following:

On 20 October 1974, Billy Lee was the owner of a 1970 Kenworth truck which he operated in defendant's business pursuant to a written agreement. Under the terms of this agreement, Lee was responsible for maintaining the truck in operating condition and paying for any repairs to it. On 20 October 1974, Lee telephoned George Hodges, president of the defendant, and informed him that the truck had broken down in Knoxville, Tennessee. Hodges told Lee that he was sending a wrecker to have the truck towed in for repairs, and that it would be repaired by Brockway. Lee did not talk with anyone at Brockway about repairing the truck or paying for the repairs. Lee never received a bill from Brockway for the repairs, but he did receive a bill from the defendant. John Sumner, a branch manager for Brockway where the Kenworth was repaired, received a call from Hodges concerning the truck. Sumner testified as follows:

> When Mr. Hodges called me, he said his business was flourishing and he needed the truck repaired as quickly as he could get it back on the road to keep his freight moving and his driver going. At that time we had no discussion concerning payment for the repairs to be made on the truck. We did discuss this when the work was completed. Mr. Hodges said that as soon as the truck got back on the road he would take care of the bill within a time limit, just as quickly as he could. He said he would pay for those repairs. Mr. Hodges told me to send the invoice to Harnett Transfer, Inc., Dunn, North Carolina, and that's what I did. The invoice was mailed approximately November 6, 1974. We have never received any payment for the work done on the vehicle . . . The work we did was described on the invoice sent to Harnett Transfer, Inc., and the amount of the invoice was $4,025.71.

Hodges never told Sumner that the invoice was incorrect or that he did not owe it prior to the time this lawsuit was instituted. Subsequent to the time the repairs were made to the Kenworth, Hodges wanted to purchase two used trucks from Sumner. Hodges suggested to Sumner that the price be raised $2,000.00 on each of the trucks and the overage be applied to the repair bill

Financial Corp. v. Transfer, Inc.

for the Kenworth. Thomas Dunn, the business manager for Brockway, talked with Hodges about the repair bill fifteen or twenty times after 21 October 1974. Hodges told Dunn "he would pay it as soon as he could, that he was going to take care of it, there was no question about it. . . . [H]e said that it was his bill and he would see that it was paid."

Defendant presented evidence tending to show the following:

George Hodges talked with John Sumner of Brockway about the repair to Lee's truck. Hodges told Sumner that payment for the repairs would be Lee's responsibility and that Harnett Transfer would not pay the bill. Hodges did tell Sumner that he would see that Brockway got paid for the repairs if Lee continued to work for Harnett Transfer. Hodges never told Sumner that Harnett Transfer would pay the repair bill.

The following issues were submitted to the jury and answered by it as indicated:

1. Did the defendant enter into a contract with Brockway Motor Trucks, a division of Mack Trucks, Inc. for the repair of a 1970 Kenworth truck?

ANSWER: Yes

2. If so, did the defendant breach the contract?

ANSWER: Yes

3. Were the rights of Brockway Motor Trucks, a division of Mack Trucks, Inc. assigned to the plaintiff, Mack Financial Corporation?

ANSWER: Yes

4. What amount, if any, is plaintiff entitled to recover of defendant?

ANSWER: $4,025.71

From a judgment entered on the verdict, defendant appealed.

*Craighill, Rendleman, Clarkson, Ingle & Blythe, by John R. Ingle, and Stephen D. Poe, for plaintiff appellee.*

*Johnson and Johnson, by W. A. Johnson, for defendant appellant.*

HEDRICK, Judge.

[1]  Defendant first contends that the trial court erred in allowing plaintiff's witness John Sumner to testify on direct, and the defendant's witness George Hodges to testify on cross-examination, about a negotiation for the purchase by defendant of two used trucks from Brockway. According to the testimony, Hodges suggested that when the financing for the purchase of the trucks was being arranged, that Sumner raise the price of each of the trucks by $2,000 and apply the extra $4,000 from the sale against the repair bill for the Kenworth truck. Defendant contends that this negotiation occurred subsequent to the events alleged by plaintiff to have created a contract between the parties for repairs to the Kenworth truck, and thus it was irrelevant and prejudicial. Defendant further contends that it should be excluded as an offer to compromise.

We think this evidence was relevant and was admissible as an admission of a party. "Anything that a party to the action has done, said or written, if relevant to the issues and not subject to some specific exclusionary statute or rule, is admissible against him as an admission." 2 Stansbury's N.C. Evidence § 167, at 4 (Brandis rev. 1973); *State v. Gaines*, 283 N.C. 33, 194 S.E. 2d 839 (1973). Such a statement is admissible if "it can reasonably be interpreted as an acknowledgment of the existence of a relevant fact." Stansbury, *supra* § 167, at 9-10. This testimony establishes an admission by Hodges that, at the time he made the statements, he considered himself liable for the debt involved in the present case. The discussion of the proposed method of payment assumed the existence of the debt, and was clearly relevant. Furthermore, the testimony was not excludable as an offer to compromise. The amount of the repair bill was $4,025.71; it would be unrealistic to assume that an offer to pay $4,000 was a compromise offer. This assignment of error has no merit.

Defendant next contends that the court erred in failing to grant his motions for a directed verdict and for a judgment notwithstanding the verdict. Defendant advances three arguments in support of this contention: (1) that there was insufficient evidence of a contract between Brockway and the defendant; (2) that, at most, the evidence might show a promise by defendant to pay the debt of Billy Lee, and such a promise is unenforceable under G.S.

§ 22-1 since it was not in writing; and (3) that, insofar as the contract related to goods sold, it was barred by G.S. § 25-2-201.

[2]  Plaintiff introduced evidence tending to show that the defendant's president, George Hodges, telephoned John Sumner at Brockway, and told him that the truck was being towed in, that his business was flourishing and "he needed the truck repaired as quickly as he could get it back on the road." After the repairs had been completed, Hodges told Sumner that he would pay for the repairs, and even instructed him as to where to send the bill. Subsequent to 21 October 1974, Hodges discussed paying for the repairs with Thomas Dunn, business manager for Brockway, approximately fifteen to twenty times. Hodges told Dunn that he was going to pay the bill as soon as he could. We think that this evidence, when viewed in the light most favorable to the plaintiff, was sufficient to show the existence of a contract between the defendant and Brockway for the repair of the truck.

[3]  With regard to the defendant's second argument, there was no evidence that Billy Lee ever entered into a contract with Brockway for the repair of his truck. The evidence discloses that Lee never had any discussions with Brockway concerning the repairs to the tractor, he never promised to pay for the repairs, and he was never billed for the repairs by Brockway. The evidence further discloses that the defendant contracted directly with Brockway for the repairs of the truck, and that no debt ever existed between Brockway and Lee for which defendant could be considered a guarantor of payment. Thus, the promise of defendant to pay for the repairs is not barred by G.S. § 22-1 as being an unwritten promise to pay the debt of another, since the evidence disclosed that the bill he promised to pay was the defendant's and not the debt of another.

[4]  We also reject defendant's argument that any contract for the parts used in the repair of the truck is rendered unenforceable by the statute of frauds provision of G.S. § 25-2-201 pertaining to the sale of goods. By its express terms, G.S. § 25-2-201 applies only to a contract for the sale of goods. In the present case, the contract was one for services rendered in the repair of a truck. The fact that various parts are also required to properly repair and service the truck is merely incidental to the repair contract, and does not bar its enforcement, either in its entirety or to the extent of the cost of the parts included.

[5]   By assignments of error numbers five and six, defendant contends that the court erred in allowing plaintiff to introduce into evidence a duplicate invoice from Brockway that had some handwritten notations on it, and that the judge's comment to the jury to examine the exhibit carefully constituted an unpermitted expression of opinion as to its weight. Defendant argues that the exhibit was inadmissible on two grounds: (1) the handwritten notations were never properly authenticated, and (2) in any event the inscriptions on the invoice were hearsay and thus incompetent.

Plaintiff's evidence tended to show that the duplicate invoice was sent to George Hodges at Harnett Transfer, and that the handwritten notations were not put on the document by anyone at Brockway. The handwritten notations on the bill are as follows:

Pd Interest on bill 7-14-75 $97.49
                    Ck # 9496

                    4025.71
Pd by ck 8934   1475.50
     Bal due    2550.21    To Brockway Motor Trucks

Billy Lee testified that this invoice was sent to him in a Harnett Transfer, Inc., envelope, and that the handwriting was on the invoice when he received it. Lee further testified that he was familiar with the handwriting of Mrs. Hollis, who did all of Harnett's settlement statements, that he had seen her handwriting on a number of occasions, and that in his opinion the handwriting on the invoice was hers.

In North Carolina, a witness "who has acquired knowledge and formed an opinion as to the character of a person's handwriting . . . from having, in the ordinary course of business, seen writings purporting to be his and which he has acknowledged or upon which he has acted or been charged . . . may give such opinion in evidence." 2 Stansbury's N.C. Evidence § 197, at 121-22 (Brandis rev. 1973). We think that Lee's testimony in the present case falls squarely within the above-quoted rule, and thus the writing was sufficiently authenticated.

Furthermore, the handwriting on the invoice did not render the exhibit inadmissible on the basis of hearsay. Hearsay is an out-of-court statement, either oral or written, that is offered into

evidence for the purpose of proving the truth of the matter asserted therein. *Bullock v. Insurance Co. of North America*, 39 N.C. App. 386, 250 S.E. 2d 732 (1979). In the present case, it is clear that the handwriting was not offered to prove the truth of the matter asserted therein, *viz.*, that the amounts written had been paid. Indeed, all the evidence tended to show that Brockway had not received any payments for the repairs. The invoice was offered only for the purpose of showing that the statements had been made. A permissible inference from the notations was that defendant considered itself liable for the account; nevertheless, the admission of the invoice was proper.

[6] Defendant also contends that the trial judge made an improper comment on the evidence with regard to the invoice when he made the following statements to the jury: "Ladies and gentlemen, you have been handed plaintiff's Exhibit 2. Each of you may examine it to the extent that you feel appropriate and necessary. Examine it very carefully." Under G.S. § 1A-1, Rule 51(a), the trial judge is expressly forbidden to convey to the jury, in any manner, at any stage of the trial, his opinion as to the importance or credibility of any of the evidence. *Searcy v. Justice*, 20 N.C. App. 559, 202 S.E. 2d 314 (1974). We do not think, however, that the judge's instruction to the jury to examine the exhibit "very carefully" when considered contextually, constituted an improper comment as to the probative force of the evidence.

[7] Defendant's remaining assignments of error all relate to the judge's instructions and to the issues submitted to the jury. The thrust of defendant's argument is that the evidence does not establish the existence of a contract between Brockway and the defendant or any agreement to pay a specific price for the repairs to the truck. Thus, defendant argues, the trial judge erred by (1) instructing the jury only as to express contracts and not instructing or submitting an issue on a *quantum meruit* theory of recovery, and (2) giving a "peremptory instruction" on the amount of damages rather than instructing and submitting an issue that plaintiff is entitled to recover only what the services are reasonably worth. Defendant cites *Pilot Freight Carriers, Inc. v. David G. Allen Co., Inc.*, 22 N.C. App. 442, 206 S.E. 2d 750 (1974), in support of its argument.

We think the defendant's contentions are without merit. In the *Pilot Freight Carriers* case, the evidence disclosed that the plaintiff had shipped crushed stone which was subsequently used by the defendant in the construction of a turkey plant. In upholding a summary judgment for plaintiff on the issue of liability, we said:

> [N]o express contract existed between the parties. These uncontroverted facts manifest a benefit conferred by plaintiff and an acceptance of such benefit by the defendant. Such circumstances dictate, in the absence of an express contract, that quasi-contract principles be imposed to prevent one party from being unjustly enriched to the detriment of the other.

22 N.C. App. at 444, 206 S.E. 2d at 752.

In contrast, the evidence in the present case tends to show that Hodges specifically telephoned Brockway and requested that the truck be repaired; that after the truck was repaired, Hodges instructed Brockway to send the bill to him; that he informed Sumner that he would pay for the repairs, and "that as soon as the truck got back on the road he would take care of the bill . . . just as quickly as he could." The only issue raised by this evidence is whether the parties entered into a contract for the repair of the truck. It does not raise the issue whether the plaintiff is entitled to recover on a theory of *quantum meruit*.

Defendant further challenges the following instruction to the jury with regard to the issue of damages: "Again with respect to this Issue, all the evidence indicates and tends to show that the costs of labor and materials was $4,025.71. If you believe this evidence, it would be your duty to answer this Issue in the sum of $4,025.71."

Defendant argues that the above-quoted portion of the charge amounts to a "peremptory instruction" on the issue of damages, and that there is no evidence that the defendant ever agreed to pay a specific amount. There is evidence in the record tending to show that the amount billed to defendant for the repairs was $4,025.71, and the invoice was even introduced into evidence. Thomas Dunn, who was employed by Brockway as business manager at the time the transactions giving rise to this case arose, testified as follows:

. . . I talked to Mr. Hodges on the phone several times, and when he would come into the office, I would talk to him about his account. On these occasions I would always ask him when he was going to pay the bill, and he said he would pay it as soon as he could, that he was going to take care of it, there was no question about it. I discussed the size of the bill with him a lot of times, and he said that it was his bill and he would see that it was paid. I discussed this particular Harnett Transfer, Inc. account with him 15 or 20 times after October 21, 1974.

This evidence is sufficient to support the challenged instruction.

We hold that the evidence adduced at trial supports the judge's instructions and the issues submitted and is also sufficient to support the verdict and judgment for plaintiff.

No error.

Chief Judge MORRIS and Judge WEBB concur.