BOND PARK TRUCK SERVICE, INC. v. DEWITT HILL

No. 8029DC1121

(Filed 18 August 1981)

**1. Evidence § 29.2— statement not verified—admissibility as business record**

In an action to recover for labor and materials supplied by plaintiff in repairing defendant's truck, plaintiff's exhibit which consisted of itemized statements of account for materials supplied and labor performed by plaintiff upon defendant's truck was not admissible pursuant to G.S. 8-45 because it was not verified; however, the exhibit was admissible under the business records exception to the hearsay rule where there was testimony that the exhibit properly reflected the work done by plaintiff's shop foreman and charges made pursuant to the work he performed.

**2. Rules of Civil Procedure § 50— directed verdict denied—waiver of right to complain on appeal**

Defendant waived the right to complain on appeal about the denial of his motion for directed verdict at the close of plaintiff's evidence by offering evidence at trial.

**3. Corporations § 1; Rules of Civil Procedure § 9— plaintiff's legal existence—general denial by defendant insufficient**

The general denial entered by defendant against plaintiff corporation's allegations failed to place plaintiff's legal existence in issue, since G.S. 1A-1, Rule 9(a) requires a defendant to plead specifically lack of capacity to sue; furthermore, headings on bills submitted to defendant and testimony of plaintiff's employees was evidence of plaintiff's corporate status.

APPEAL by defendant from *Gash, Judge.* Judgment entered 9 July 1980 in District Court, RUTHERFORD County. Heard in the Court of Appeals 8 May 1981.

Plaintiff brought this suit to recover $3,620.12 for labor and materials supplied by plaintiff in repairing defendant's White Freightliner tractor. Defendant counterclaimed for $5,000 for breach of contract to repair and for negligent repairs to the motor vehicle.

Plaintiff's complaint alleged that it was a corporation organized and existing in South Carolina; that in March, at defendant's

request, plaintiff repaired defendant's White Freightliner tractor and that defendant refused to pay for these repairs. Plaintiff sought $3,620.12, the amount for which defendant was billed, plus interest.

Defendant answered, moving to dismiss plaintiff's action for failure to state a claim and denying any breach of contract. Defendant counterclaimed, alleging that plaintiff had contracted to repair his truck and had repaired his truck in February for $4,426.58; that the crankshaft broke the day he received the truck from plaintiff; and that plaintiff had negligently repaired his truck. Defendant sought $5,000.00 in damages for loss of use of his truck and for negligent repairs. Plaintiff answered defendant's counterclaim, denying any negligence.

Plaintiff's evidence was as follows: Jack Bailey, employed by plaintiff as shop foreman and mechanic, testified that defendant brought his truck in for a complete overhaul of the engine in February. A work order dated 21 February 1979 indicated that defendant was billed for $4,426.58 worth of work and parts in February. Mr. Bailey described in detail the work done on the engine in February. The crankshaft was polished and checked. It was not magnafluxed, which reveals any cracks, or line bored, which determines if the crankshaft had done any damage to the block. The crankshaft had previously been turned to 10,000 and Mr. Bailey informed defendant that a standard crankshaft was preferred because they had to guarantee their work. Also, a crankshaft that has been turned has heat on it from the previous bearing and is likely to cause damage. Mr. Bailey and Gordon Boatwright, a mechanic's helper employed by plaintiff, testified that defendant did not want to change to a standard crankshaft because he had just had the 10,000 shaft put in and was satisfied with it. Defendant paid the $4,465.58 bill and picked his truck up on 7 March. Mr. Bailey testified that when he saw defendant's truck later on 7 March, the crankshaft was broken in two places. The bearings had not damaged the crankshaft and it was not clear what caused it to break, and Mr. Bailey did not feel that it was their fault. A new standard crankshaft was put in the truck, as were new bearings. Defendant had told them to do what was necessary to fix the truck. The bills, totaling $3,620.12, sent to defendant for the repair work done in March, accurately reflect the work done and the parts repaired. The bills were introduced

into evidence over defendant's objection. These bills were prepared by a Mr. Grimes, the co-owner of Bond Park Truck Service, Inc., from "dummy" work orders prepared by Mr. Bailey at the time the work was performed. Mr. Bailey did not compare his work orders with those prepared by Mr. Grimes. The bills sent to defendant were dated 7 March, 12 March, 20 March, 23 March and 16 April. The truck left the shop 12 March. Defendant again objected to the admission of these bills on the grounds that they were prepared by a party who had not testified and had not been properly identified and qualified. The court left the exhibit in evidence.

Defendant testified that he owned the truck he brought to plaintiff for repairs in February. Plaintiff took two and a half weeks to overhaul the engine and charged more than it had estimated. When he picked up the truck on 7 March, Mr. Grimes informed him that the work was guaranteed for 90 days or 10,000 miles, whichever occurred first. Defendant put less than 300 miles on the truck before the crankshaft broke on 7 March. Because the first repair job was to be a major overhaul, defendant assumed that the crankshaft would be magnafluxed as well as polished and would be replaced if necessary. Mr. Bailey never recommended that he get a standard crankshaft. The second repair job by plaintiff was only to fix what had broken. Defendant assumed he would not have to pay for the last repair bill because he was told by plaintiff's employees not to have the work done anywhere else. During the second repair job, the mechanics broke the tachometer and speedometer, which they did not replace, and had to replace the starter, alternator, regulator and two batteries because they had wired the starter up backwards. Defendant had the tachometer and speedometer replaced at a cost of $187. Since March of 1979, defendant has had constant problems with his truck. It started burning oil. In June, he spent $453.36 because bolts were missing from the bellhousing. In August, a breather was sucked into the oil pan, costing $231.12 to repair. Defendant's sole income is from driving his truck. He introduced evidence of his income from driving the truck under a lease agreement with Chemical Leamon. Defendant missed five weeks of work while plaintiff was repairing his truck. He did not rent another truck during this time because of the expense. Mr. Hennessey, an expert in the field of diesel engines, testified that a line bore on a

crankshaft is not normally done unless there is some indication that it is necessary. A standard crankshaft is the best, and there is a greater risk with a 10,000 crankshaft. He could not say why defendant's crankshaft broke.

On rebuttal, Mr. Bailey and Mr. Boatwright testified that before the first overhaul, Mr. Bailey told defendant that a standard crankshaft would be better, but defendant replied that the crankshaft had been put in recently and was in good shape.

At the close of all of the evidence, both plaintiff and defendant moved for a directed verdict on the counterclaim and on the complaint, respectively. Both motions were denied.

The jury returned a verdict in favor of plaintiff on its action for breach of contract and in favor of defendant on his counterclaim. Plaintiff' recovered $3,620 and defendant $848.62. Both plaintiff and defendant moved for a judgment notwithstanding the verdict and for a new trial. Their motions were denied by the trial court. Both parties appealed from the judgment.

*Hamrick, Bowen, Nanney & Dalton by Walter H. Dalton, for the plaintiff-appellee.*

*Robert W. Wolf, for the defendant-appellant.*

MARTIN (Robert M.), Judge.

[1] Defendant contends that the court erred by admitting plaintiff's Exhibit One into evidence. Plaintiff's Exhibit Number One, which consisted of itemized statements of account for materials supplied and labor performed by plaintiff upon defendant's truck, was not verified. Therefore it was not admissible pursuant to N.C. Gen. Stat. § 8-45 which reads, in pertinent part, as follows:

> In any actions instituted in any court of this State upon an account for goods sold and delivered, . . . for services rendered, or labor performed, . . . a verified itemized statement of such account shall be received in evidence, and shall be deemed prima facie evidence of its correctness.

We must determine whether plaintiff's Exhibit Number One was admissible under the business records exception to the hearsay rule. In *Supply Co. v. Ice Cream Co.*, 232 N.C. 684, 685-686, 61 S.E. 2d 895, 896-897 (1950), the Supreme Court said:

The rule of evidence formerly observed by the courts limiting proof of items of business transactions to matters within the personal knowledge of a witness, has undergone revision in the light of modern business conditions and methods. (Citations omitted.) The impossibility of producing in court all the persons who observed, reported and recorded each individual transaction gave rise to the modification which permits the introduction of recorded entries, made in the regular course of business, at or near the time of the transaction involved, and authenticated by a witness who is familiar with them and the method under which they are made. This rule applies to original entries made in books of account in regular course by those engaged in business, when properly identified, though the witness may not have made the entries and may have had no personal knowledge of the transactions. (Citations omitted.)

In 1 Stansbury's N.C. Evidence § 155 (Brandis rev. 1973), after reviewing the business entries rule in this State and its liberalization due to changing business conditions, the author on pages 522 and 523 says:

It would be futile to attempt to produce all of the persons who observed, reported and recorded a particular transaction, and even if they were produced they could seldom testify to anything except their habit of reporting correctly — a fact which may well be taken for granted without proof. This habit, strengthened by the discipline which develops within a business group, furnishes a sufficient guaranty of trustworthiness to justify the admission of regular business entries when properly identified and explained.

. . . If the entries were made in the regular course of business, at or near the time of the transaction involved, and are authenticated by a witness who is familiar with them and the system under which they were made, they are admissible.

Plaintiff's Exhibit Number One was prepared by Mr. Grimes, a co-owner of plaintiff corporation. It was identified by Mr. Bailey, the shop foreman, who was familiar with it in that he had personally performed the work and had made the original entries on the "dummy orders," work orders used in the shop, from which

the exhibit was made. He testified on cross-examination in reference to the exhibit "this copy was made from my copy I have in my shop. This reflects what we did and the dates we did it on." On direct examination Mr. Bailey testified that Exhibit Number One properly reflected the work done and the charges made pursuant to the work he performed.

He further testified "[w]e got the tractor on Thursday morning and the tractor left on Tuesday morning; the following Tuesday evening. Everything on these bills reflects the work and the parts we repaired."

A careful review of the testimony discloses that the entries were made in the regular course of business. Mr. Bailey, the witness who authenticated the bills, was familiar with them and the system under which they were made. The only possible question with regard to their admissibility was whether they were made at or near the time of the transaction involved. The evidence discloses that the work was performed between 7 March and 12 March. The "dummy" orders were prepared by Mr. Bailey during this period of time. The bills admitted into evidence were dated 7, 12, 20 and 23 March and 16 April. In our opinion, the exhibit meets the requirement of being made at or near the time of the transaction involved.

Plaintiff argues that even if admission of the exhibit into evidence was error, the error was harmless for the reason that the defendant at no time questioned the charges made for the services rendered or parts supplied. We note, however, that in his answer defendant denied plaintiff's allegation that the amounts stated in the bills accurately reflected the cost of services and materials supplied, although he did not contest the charges in his testimony at trial. Plaintiff had the burden of proving at trial the value of the materials and services rendered in order to recover those amounts in the action. If admission of the exhibit was error, it was not rendered harmless for the reason argued by plaintiff.

Any possible error in admission of the evidence in question was rendered harmless, however, by the fact that Mr. Bailey testified that $3,620.12 was the amount of the labor and material supplied by plaintiff in repairing defendant's truck. Defendant's first assignment of error is therefore overruled.

By his second and third assignments of error, defendant contends the court erred by denying his motions for directed verdict at the close of plaintiff's evidence and at the close of all the evidence because there was a material variance between plaintiff's allegations and plaintiff's evidence. Plaintiff alleged in its complaint that it was a duly organized South Carolina corporation which defendant denied. Defendant argues there was no evidence, documentary or testamentary, offered at trial that plaintiff was in fact a corporation.

[2] With regard to the defendant's second assignment of error, we note that defendant waived the right to complain on appeal about the denial of his motion for directed verdict at the close of plaintiff's evidence by offering evidence at trial. *Overman v. Products Co.*, 30 N.C. App. 516, 227 S.E. 2d 159 (1976); *Woodard v. Marshall*, 14 N.C. App. 67, 187 S.E. 2d 430 (1972). Defendant's second assignment of error is therefore overruled.

[3] With regard to defendant's third assignment of error, we find no error in the trial court's denial of defendant's motion for directed verdict, made at the close of all the evidence. The general denial entered by defendant against plaintiff's allegations fails to place plaintiff's legal existence in issue. Rule 9(a) of the North Carolina Rules of Civil Procedure requires a defendant to specifically plead lack of capacity to sue. Furthermore, the headings on the bills submitted to defendant and the testimony of plaintiff's employees were evidence of plaintiff's corporate status. Defendant's action in filing a counterclaim against "Bond Park Truck Service, Inc." and in presenting into evidence a check made payable to "Bond Park Truck Service, Inc." are admissions of plaintiff's corporate existence. Thus, we must also overrule defendant's fourth assignment of error which was directed to the trial court's statement in its instructions to the jury that "plaintiff has offered evidence tending to show that Bond Park Truck Service, Inc. is a corporation."

Defendant abandoned his fifth assignment of error in his appellate brief.

By his sixth and final assignment of error, defendant contends the trial court erred in its instruction on the measure of damages in plaintiff's action by failing to instruct on the theories of *quantum meruit* or part performance. Neither the pleadings

nor the evidence raised the issues of whether plaintiff was entitled to recover on theories of *quantum meruit* or part performance. We find that the trial court correctly instructed the jury on the measure of damages, *see Financial Corp. v. Transfer, Inc.*, 42 N.C. App. 116, 256 S.E. 2d 491 (1979), and we therefore overrule defendant's sixth assignment of error.

On cross-appeal, plaintiff contends that the court erred by denying its motion for directed verdict on defendant's counterclaim at the close of defendant's evidence and by denying its motion for judgment notwithstanding the verdict on the issues related to defendant's counterclaim. Plaintiff argues that the court improperly submitted the third issue, which was related to defendant's counterclaim, because the issue was framed in the law of contract, whereas defendant's counterclaim alleged negligence rather than breach of contract or warranty. Defendant's counterclaim alleged negligence and breach of a contract to repair and evidence was presented that plaintiff failed to perform repairs as agreed, which constituted a breach of contract. This assignment of error is overruled.

In the trial, we find no prejudicial error.

No error in defendant's appeal.

No error in plaintiff's cross-appeal.

Judges CLARK and HILL concur.