BERNICE M. JONES, ADMINISTRATRIX OF THE ESTATE OF BEVERLY A. JONES, DECEASED v. THOMAS GLENN ALLRED, RICHARD ALLEN HUBBARD AND TONI C. KINSEY

No. 8219SC1098

(Filed 18 October 1983)

1. **Appeal and Error § 68.2— driver of vehicle—sufficiency of evidence—law of the case**

In a wrongful death action arising out of a single car accident, a decision on a prior appeal of the case that plaintiff had presented sufficient circumstantial evidence to support an inference by the jury that one defendant was the negligent driver of the car at the time of the accident became the law of the case and was controlling in a retrial of the case where the only new evidence at the second trial was the testimony of a rescue squad captain that decedent's left foot was wedged between the driver's seat and the left front door, since such testimony did not conclusively show that decedent was the driver but was merely more evidence for the jury to consider, and the evidence at the second trial was thus not materially different from that at the first trial.

2. **Automobiles and Other Vehicles § 66.1; Evidence § 33.2— identity of driver— investigating officer—opinion based on information from defendants**

In a wrongful death action arising out of a single car accident, testimony by the investigating patrolman that his investigation revealed that decedent was driving at the time of the accident was hearsay and improperly admitted where the patrolman stated that his determination of the driver was based only on information received from defendants.

**3. Automobiles § 45.4— measurements at accident scene—failure to show proper foundation**

The trial court did not err in refusing to permit testimony by the investigating officer concerning measurements of physical evidence at the accident scene where it was not shown that the measurements were taken close to the time of the accident.

APPEAL by plaintiff from *Walker (Hal H., Jr.), Judge*. Judgment entered 13 May 1982 in Superior Court, RANDOLPH County. Heard in the Court of Appeals 2 September 1983.

*Boyan and Nix by Clarence C. Boyan and Robert S. Boyan for plaintiff appellant.*

*Smith, Moore, Smith, Schell & Hunter by Stephen P. Millikin and Jeri L. Whitfield; and Nichols, Caffrey, Hill, Evans & Murrelle by Karl N. Hill, Jr., for defendant appellees.*

BRASWELL, Judge.

A 1971 Vega automobile left Miller's Mill Road on a curve at the Uwharrie River, jumped the stream, and came to rest upside down in the water's opposite bank. The rescue squad removed the lifeless body of Beverly Jones from the wreckage. Three people had occupied the vehicle: Beverly Jones, Richard Hubbard, and Toni Kinsey. The fundamental issue in this action for wrongful death in the negligent operation of the Vega on 30 October 1975 is: who was the driver?

The plaintiff initially commenced her action on 28 October 1977, but gave notice of voluntary dismissal as provided by G.S. 1A-1, Rule 41(a)(1)(i) on 27 April 1978. This action was recommenced on 26 April 1979. At the close of the plaintiff's evidence, the defendants made a motion for a directed verdict which was renewed at the close of all the evidence. The trial court granted the motion and the plaintiff appealed to this Court. This Court reversed the trial court, holding that plaintiff's evidence was sufficient to submit the case to the jury concerning the negligence of all three defendants. *Jones v. Allred*, 52 N.C. App. 38, 278 S.E. 2d 521 (1981). The defendants appealed to the North Carolina Supreme Court which affirmed the decision of the North Carolina Court of Appeals. *Jones v. Allred*, 304 N.C. 387, 283 S.E. 2d 517 (1981).

Jones v. Allred

This case was retried on 10 May 1982 before a jury. At the close of the plaintiff's evidence, the defendants again made a motion for a directed verdict which was granted by the trial court. The plaintiff appeals this ruling.

The complaint's first cause of action alleges that Richard Hubbard was the driver. The plaintiff's evidence tends to show that Hubbard was the driver when the Vega departed at approximately 7:15 p.m. from Charlie's Grill, a distance of five miles from the scene. The first call to the highway patrolman about the wreck came at 7:39 p.m. The plaintiff claims that Beverly Jones was a passenger in the right front seat and that Toni Kinsey sat in the middle front. This Vega had two bucket front seats and a regular rear seat. The defendants in their answer allege that Beverly Jones was the driver.

Thomas Allred owned the Vega, the possession of which he had placed with his stepdaughter, Toni Kinsey. About an hour before the wreck Toni Kinsey had driven the vehicle to Beverly Jones' residence. After picking up Beverly Jones, her brother Harland Jones, and Steve Hill, Toni Kinsey drove the Vega to defendant Allen Hubbard's house. Hubbard then commenced driving, with Toni Kinsey in the middle front and Beverly Jones in the right front seat. Subsequently, the parties arrived at Charlie's Grill where Harland Jones and Steve Hill got out of the vehicle. At that time no change occurred in the position of those in the front seat as the vehicle left Charlie's Grill on that fateful ride.

Beverly Jones' mother stated that Beverly was 15 years of age, that she did not know of any time in which Beverly had operated a motor vehicle, and that as of the day of the accident Beverly had had only one class of bookwork in driver's education in high school. Beverly did not possess any type of driver's license.

It was Ronald White, a member of the rescue squad, who removed Beverly's body from the vehicle. The Vega was lying upside down on its top in the Uwharrie River by the bank. Because the specific location of Beverly's body in the automobile is crucial to each side's theory of the case, we now quote Mr. White's testimony directly from the record.

Yes, the windshield was missing. And so the hood that goes across the front of the car—outside—had been knocked

back into the car the distance of approximately ten inches on the far right side, passenger side, and about two inches on the far left side, the driver's side. It was approximately six inches into the car in the middle. Beverly Jones's head had been pinned by the hood in the middle through the passenger side of the automobile. Her body and head was approximately in the middle to the passenger's side of the automobile. More to the passenger side than the driver's side, but generally in the middle. It wasn't much to the passenger's side, generally in the middle, but the place where Beverly's head was pinned to the headliner was at the place where the hood was approximately six inches into the car.

Yes, I indicated that she was lying on her back flat and that her right leg was stretched out directly toward the rear. Her left leg was suspended into the air which meant that her left leg and foot was towards the floorboard. Her left foot was flat against the floorboard. I am saying the heel of her foot was against the floorboard. The heel of her shoe which was still on. The heel of her shoe and foot was against the floorboard of the car and between the left seat and the left door, so in effect her foot then was caught between the driver's seat and the left door. It was caught sufficient hard or fast that I had difficulty pulling her foot out from that position. It was wedged between the driver's seat and the left front door. Her foot was towards the rear of the seat. The toe of her left foot was approximately about the middle of the distance between the front of the seat and the back of the seat. That would place her entire foot to the side of the seat. To the best of my knowledge no part of the rear of heel protruded out from behind the seat.

To remove Beverly's body Mr. White had to go to the rear of the automobile and slip her left foot, heel first, out from behind the driver's seat. Then her head was freed, and her body was removed through the driver's side door.

Patrolman Byrd testified that the primary damage to the front of the Vega was on the right front of the passenger side, that the steering wheel was bent, and that the headrest portion of the passenger's seat was bent backwards. Admitted over objection, Byrd testified that in his opinion from his investigation and

from his discussions with the defendants that Beverly Ann Jones was driving at the time of the accident.

Dr. Gordon Arnold, the medical examiner, determined that the immediate cause of death of Beverly was a deep, severe shearing injury to her face going back as far as the front of the spinal column, the blow having had a guillotine effect, and a skull fracture.

Dr. Arnold did briefly examine her body other than the head region, but found no significant injury below the head, such as "bruises, broken ribs, scratches, and cuts." Because of the unusually severe head injury, he did not find it necessary to remove any of her clothing to carry out his examination, so "very possibly there could have been internal injuries that were not disclosed" by his examination.

The plaintiff asserts that the trial court erred in three respects: (1) by granting the defendant's motion for a directed verdict; (2) by admitting the Highway Patrolman's determination, based on hearsay, of the driver's identity; and (3) by refusing to permit testimony concerning the physical evidence and measurements taken at the scene of the accident.

The ultimate issue in this case is whether the defendant's motion for a directed verdict was properly granted. A motion for a directed verdict pursuant to G.S. 1A-1, Rule 50(a) questions "whether the evidence was sufficient to entitle the plaintiff to have a jury pass on it." *Hunt v. Montgomery Ward and Co.*, 49 N.C. App. 642, 644, 272 S.E. 2d 357, 359 (1980). The scope of our review is "the identical question which was presented to the trial court . . . namely, whether the evidence, when considered in the light most favorable to plaintiff, was sufficient for submission to the jury." *Kelly v. Harvester Co.*, 278 N.C. 153, 157, 179 S.E. 2d 396, 397 (1971). The motion should be denied if the court finds more than a scintilla of evidence to support the plaintiff's *prima facie* case in all its constituent elements. *Hunt v. Montgomery Ward and Co., supra,* at 644, 272 S.E. 2d at 360 (1980).

[1]   Our determination of this issue is aided by the fact that this case has previously been before both appellate courts. On appeal from the first trial, this Court, with the later approval of the Supreme Court, held that the plaintiff was entitled to have the

case submitted to the jury because she had sufficiently established through circumstantial evidence an inference that the defendant Hubbard was the negligent driver of the car at the time of the accident. Specifically, we stated that "[o]ur appellate courts have consistently approved of the use of circumstantial evidence to establish the identity of the driver of an automobile at the time of a collision." *Jones v. Allred, supra,* at 43, 278 S.E. 2d at 524. The law of the case derived from the first appeal is controlling in the present case:

> When it has been determined on appeal that the evidence warrants the submission of the case to the jury, such determination of the Supreme Court is the law of the case and, in a subsequent hearing upon substantially the same evidence, the refusal of the trial court to submit the case to the jury is error. [Citations omitted.] But where the evidence on the subsequent trial is materially different from that on the former trial, the decision of the Supreme Court on the former appeal as to the sufficiency of the evidence is not conclusive. [Citations omitted.]

*Johnson v. R.R.*, 257 N.C. 712, 713, 127 S.E. 2d 521, 522 (1962). The question then becomes whether the evidence in the second trial when considered in the light most favorable to the plaintiff is materially different from the first trial to warrant a directed verdict in favor of the defendants. Evidence considered "materially different" in this case would be new evidence conclusively proving that Beverly Ann Jones was the driver at the time of the accident. We hold that there was no materially different evidence and the defendants' motion for a directed verdict was therefore improperly granted.

Basically, the same circumstantial evidence was introduced by the plaintiff in both trials to show that Richard Allen Hubbard was the driver of the car at the time of the collision. In the record before this Court, the plaintiff's evidence indicated: that approximately five miles and at the most twenty-four minutes before the accident the defendant Hubbard was last seen driving the car with Beverly Ann Jones in the passenger seat; that from Dr. Arnold's examination the deceased had no significant injuries, other than the blow to her head, and no bruises or marks on her stomach or chest area; that Beverly Ann Jones was too young to

obtain a driver's license; and that to her mother's knowledge the deceased had never operated a motor vehicle. The inferences which can be drawn from this evidence have been held sufficient in North Carolina to send the case to the jury. *Drumwright v. Wood*, 266 N.C. 198, 146 S.E. 2d 1 (1966); *Stegall v. Sledge*, 247 N.C. 718, 102 S.E. 2d 115 (1959); *Johnson v. Gladden*, 33 N.C. App. 191, 234 S.E. 2d 459 (1977). Yet, more importantly, this circumstantial evidence was held sufficient to overcome a directed verdict by the defendants in this case. *Jones v. Allred*, 52 N.C. App. 38, 278 S.E. 2d 521, *aff'd*, 304 N.C. 387, 283 S.E. 2d 517 (1981).

The only new evidence introduced was the testimony of Ronald White, the rescue squad captain, who stated that Beverly Ann Jones' left foot was wedged between the driver's seat and the door. The defendants argue that the granting of the directed verdict was proper because this evidence conclusively proves Beverly Ann Jones was the driver and that it would have been improper to allow the jury to speculate how she might have been thrown from the passenger seat over two people and have her foot caught in that position. We hold that White's description of exactly how Beverly Ann Jones was found does not conclusively prove she was driving, but is merely more evidence for the jury to consider in reaching their decision. He stated that with the car turned upside down she was lying on her back with her right leg stretched out directly toward the rear of the car and her left leg pointing upwards towards the floorboard with her left foot wedged between the driver's seat and the door. The hood of the car which had come through the windshield area of the car had pinned her head slightly towards the passenger side of the car. His testimony revealed that because he was unable to pull her foot down from between the seat and the door he had to slide it back, heel first, towards the back of the car, creating an inference that her foot slid into this position from the backseat. Yet, the inference to be drawn from this evidence is for the jury to decide. It is no more speculative for the jury to determine how her left foot came to rest in this position from sitting in the passenger's seat or the back seat than from sitting in the driver's seat. In light of the fact that the original circumstantial evidence was sufficient to go to the jury and that the new evidence does not conclusively prove she was the driver, the law of the case governs and the granting of a directed verdict was improper.

[2] This result is even more compelling in view of the plaintiff's second assignment of error that the patrolman's testimony that Beverly Ann Jones was the driver is incompetent. Certainly it was very damaging to the plaintiff's case to have the investigating officer report that Beverly Ann Jones was the driver. Without this evidence, there is no direct testimony which positively or conclusively identifies Beverly Ann Jones as the driver. Patrolman Byrd testified on cross-examination over repeated objections that his investigation revealed that the defendant Hubbard was seated in the middle of the bucket seats, that the defendant Kinsey was seated in the front passenger's seat, and that Beverly Ann Jones was driving at the time of the accident. After telling the jury six different times that Beverly Ann Jones was the driver, he stated, "when I say I made a determination of the driver it is strictly [from] information that I received from the defendants and the defendants only." His testimony, therefore, was hearsay: an out-of-court statement offered for the purpose of proving the truth of the matter asserted therein which probative force depends upon the competency and credibility of some other person not on the witness stand. *Randle v. Grady*, 228 N.C. 159, 163, 45 S.E. 2d 35, 39 (1947); *Financial Corp. v. Transfer, Inc.*, 42 N.C. App. 116, 122-23, 256 S.E. 2d 491, 496 (1979). These statements are inadmissible because they are hearsay and fit within no recognized exception to the hearsay rule, and their admission constitutes reversible error. Also, the initial question asked by the plaintiff concerning the patrolman's investigation was not sufficient to "open the door" with regard to the subsequent hearsay testimony.

[3] In the final assignment of error, the plaintiff complains that the trial court committed error by refusing to permit testimony of the physical evidence found and the measurements taken at the scene by Patrolman Byrd. We hold this evidence was properly excluded and in any event would not have constituted prejudicial error. The evidence was properly excluded because of the plaintiff's failure to lay a proper foundation for the evidence. Patrolman Byrd states that "[a]s to whether or not I made those measurements prior to talking with either of the defendants, that I couldn't say. . . . I couldn't say whether I talked to either one of the defendants prior to making the measurements or afterwards at that particular night." With this type of physical evidence it is

crucial that the officer at least be able to establish that the measurements were taken close to the time of the accident to insure the least amount of change in the evidence. Without this foundation, the trial court had no assurance that the evidence being recited to the jury was produced by the actual accident in question. Also, this evidence does not go to the identity of the driver, but to the driver's negligence. In *Greene v. Nichols*, 274 N.C. 18, 27, 161 S.E. 2d 521, 527 (1968), the court held that when an automobile leaves the highway without apparent cause and inflicts injury, "an inference of the driver's actionable negligence arises, which will take the case to the jury." Since there was sufficient evidence to show the driver's negligence, the exclusion of this evidence would not have prejudiced the plaintiff. This assignment of error is overruled.

Our ruling upon the first two assignments of error mandates that this case be

Reversed and remanded for a new trial.

Judges BECTON and JOHNSON concur.